BETTY THORNE NANTZ v. EMPLOYMENT SECURITY COMMIS-
SION OF NORTH CAROLINA AND THE NORTH CAROLINA
STATE BOARD OF PERSONNEL

No. 94

(Filed 14 July 1976)

1. **Master and Servant § 10— contract of employment — termination**

     A contract of employment which contains no provision concerning
its duration or the means and procedures by which it might be termi-
nated, even though it expressly refers to the employment as a regular,
permanent job, is terminable at the will of either party irrespective of
the quality of performance by the other party.

2. **Master and Servant § 10— employment by State — no property right
in job**

     Employment by the State of N. C., or by one of its political sub-
divisions or agencies, does not *ipso facto* confer tenure or a property
right in the position.

3. **Administrative Law § 4; Constitutional Law § 33— administrative
hearing — silence of employee — right of protection against self-
incrimination inapplicable**

     Any adverse inferences drawn by the State Personnel Board from
petitioner's failure to testify at the hearing before it did not amount
to an impairment of her constitutional protection against self-incrimi-
nation, since such inferences are not precluded where the protection
is claimed by a party to a civil cause.

4. **Administrative Law § 5— action against State Personnel Board —
power only to recommend — judicial review improper**

     Clearly, G.S. 126-4(9) (repealed, effective 1 February 1976) au-
thorized the State Personnel Board, upon an appeal to it by a dis-
missed employee, to do no more than make an advisory recommen-
dation to the department head, and it was not authorized to direct
reinstatement of the dismissed employee; therefore, its determination
was not an "administrative decision" as defined by G.S. 143-306 and
so was not subject to judicial review pursuant to G.S. 143-307.

5. **Administrative Law § 5; Master and Servant § 10— dismissal of em-
ployee of State agency — judicial review improper**

     Since G.S. 96-4 does not contemplate judicial review of a simple ad-
ministrative action such as the employment, promotion, demotion or
discharge of an employee, but contemplates a determination of rights
and duties of persons, organizations or corporations subject to the
regulatory authority of the agency, the action of the Employment
Security Commission in discharging petitioner was not subject to
judicial review, unless petitioner had a constitutional right to an
agency hearing prior to her dismissal.

6. **Administrative Law § 4; Master and Servant § 10— dismissal of employee of State agency — due process — notice and hearing**

    Petitioner, whose employment with the Employment Security Commission was terminated because of her refusal to aid the agency in its investigation of anonymous letters alleging mismanagement and sexual misconduct by employees in the office in which petitioner worked, was not deprived of liberty without a hearing and, therefore, without due process of law, since petitioner had no property right in her employment and thus was not entitled to a hearing; even so, petitioner was given adequate notice and an opportunity to be heard before her dismissal by the Commission and after dismissal by the State Personnel Board; and the action of the Commission in dismissing petitioner was not such as would damage her good name in the community or bar her from other employment.

APPEAL by petitioner from the decision of the Court of Appeals, reported in 28 N.C. App. 626, 222 S.E. 2d 474, affirming judgment for the defendants by *Alvis, J.,* at the 13 June 1975 Session of WAKE, *Vaughn, J.,* dissenting.

    For a number of years Mrs. Nantz was employed as Labor Market Analyst in the Charlotte office of the Employment Security Commission. She was discharged by the State Director of the Commission. She sought review of this action by the State Personnel Board. That Board concluded the action of the Commission was justified. The petitioner then filed her petition for further review in the Superior Court of Wake County, asking that the petitioner be reinstated in her employment and reimbursed for wages and other benefits of which she had been deprived by the action of the Commission. The Superior Court dismissed the petition as to the State Personnel Board for the reason that the Board is not an administrative agency as defined by G.S. 143-306(1) in that it is not authorized to make decisions but merely makes recommendations and, therefore, the court was without jurisdiction under G.S. 143-306 to review its recommendation. The Superior Court denied the motion of the Commission that the action be dismissed as to it. Thereupon, the matter came on for a hearing upon the record as between the petitioner and the Commission.

    The Superior Court concluded: There is no statute in North Carolina which secures job tenure to State employees; the Commission has no authority to enter into contracts with its employees assuring them of continuing employment; the record shows no conduct by the Commission leading the petitioner to expect continued employment; the sole reason for the petitioner's

dismissal was her failure to cooperate with the Commission in its investigation of a matter seriously affecting the exercise of its official duties; the action of the Commission is based upon substantial cause and is not capricious or arbitrary; the record does not show damage to the petitioner's good reputation and such damage cannot be assumed; the petitioner had not shown that her ability to obtain other employment has been substantially diminished by the action of the Commission; the record does not support the petitioner's claim that her refusal to provide for the Commission the requested information arose from a claim of a constitutional right to refrain from incriminating herself or that the Commission improperly inferred guilt of the petitioner from the exercise of that right; the dismissal of the petitioner by the Commission has not violated any of her constitutional rights; the petitioner has not shown she was entitled to a due process procedure but it appears that she has been accorded due process of law; the petitioner has failed to substantiate her allegations that the action of the Commission was not supported by competent, material and substantial evidence. Thereupon, the court ordered that the petitioner's dismissal by the Commission be affirmed and this cause dismissed.

The Court of Appeals affirmed, noting that G.S. 126-2 et seq. effective 1 February 1976, has no application to the present case. The dissent of Vaughn, J., is not directed to the merits of the matter but is upon the ground that the Superior Court did not have jurisdiction to act upon the petition for review and the appeal to the Court of Appeals should have been dismissed.

The record of the hearing before the State Personnel Board, upon which the Superior Court acted, tends to show:

In October 1973, the then Director of the Commission received through the mail an anonymous letter intimating that "affairs (male & female)" were going on in the Charlotte office of the Commission and that promotions were made "on such a basis." The Director suspected that an employee of the Charlotte office might have responsibility for such letter due to the wording of the letter and the attachment thereto of certain "internal documents" relating to the management of the Charlotte office. Subsequently, another anonymous letter was received by the Governor and by the Chairman of the Commission. This referred to the assistant manager of the Charlotte office as the "paramour of the manager."

---

Nantz v. Employment Security Comm.

---

The Commission employed an expert examiner of disputed documents to compare the anonymous letters with documents which the Commission determined to have been typed upon a typewriter in the home of the petitioner. The expert reported that the documents in question were typed upon the same typewriter.

The Director of the Commission thereupon held a conference with the petitioner. The petitioner did not cooperate. When confronted with the report of the expert to the effect that the anonymous letters were written on the typewriter in her home, the petitioner refused to make any comment whatsoever or to assist the Director and his staff in investigating the incident. She neither confirmed nor denied that she was responsible for or knew about the anonymous letters.

The letters had a detrimental effect upon the operation of the Charlotte office, causing hesitancy on the part of the manager and assistant manager to carry on their work together in the customary manner and disrupting the morale and efficient operation of the office. In the opinion of the Director of the Commission, the letters impaired the reputation and efficiency of the agency as a whole and of the Charlotte office in particular. The investigation of the Commission revealed no evidence whatever of any improper conduct by employees in the Charlotte office.

The Director of the Commission offered to place the petitioner in another office of the Commission, within commuting distance, the only vacancy therein being at a slightly lower salary. This the petitioner rejected. Thereupon, she was dismissed. To continue her employment in the Charlotte office would have required that she work in the same office with the manager and assistant manager so accused in the anonymous letter. In the opinion of the Director of the Commission, this would not be conducive to efficient operation of the office.

*Rufus L. Edmisten, Attorney General, by William H. Guy, Associate Attorney, for State Personnel Board.*

*H. D. Harrison, Jr., Garland D. Crenshaw, Howard G. Doyle and Thomas S. Whitaker for Employment Security Commission.*

*Bailey, Brackett & Brackett, P.A., by Ellis M. Bragg for Petitioner.*

LAKE, Justice.

We are not here concerned with Ch. 667 of the Session Laws of 1975, modifying G.S. Ch. 126 concerning the State Personnel System and making provision for employee appeals of grievances and disciplinary action. That Act, by its terms, did not become effective until 1 February 1976. For the same reason, we are not here concerned with Ch. 1331 of the Session Laws of 1973, establishing procedures for the conduct of proceedings before administrative agencies and establishing a code of administrative regulations. That Act provided that it would become effective 1 July 1975 and "shall not affect any pending administrative hearings." By Ch. 69 of the Session Laws of 1975, the 1973 Act was amended to change its effective date to 1 February 1976. We thus express no opinion herein as to procedures to be followed in the dismissal of an employee of a State agency subsequent to 1 February 1976. The petitioner's employment was terminated as of 18 January 1974. The judgment of the Superior Court was entered 13 June 1975.

[1, 2] The petitioner was not a public officer elected for a specified term. She was an employee, and nothing in the record indicates the presence of any provision in her contract of employment concerning its duration or the means and procedures by which it might be terminated. As we said in *Still v. Lance,* 279 N.C. 254, 182 S.E. 2d 403 (1971), "Nothing else appearing, such a contract of employment, even though it expressly refers to the employment as 'a regular, permanent job,' is terminable at the will of either party irrespective of the quality of performance by the other party." No statute of this State conferred upon State employees, such as this petitioner, tenure or the right to judicial review of an administrative action terminating the employment. Employment by the State of North Carolina, or by one of its political subdivisions or agencies, does not *ipso facto* confer tenure or a property right in the position. *Still v. Lance, supra; Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed. 2d 1230 (1961); *Freeman v. Gould Special School District,* 405 F. 2d 1153 (8th Cir. 1969). Mere longevity of employment, even though the employee's service be of excellent quality, does not confer upon the employee such property right, *Still v. Lance, supra.*

[3] The petitioner does not contend and nothing in the record suggests that her dismissal from employment was in retaliation

for her exercise of a constitutional right or was for the purpose of discouraging her exercise of such right. See, *Cafeteria Workers v. McElroy, supra.* The petitioner asserts, on appeal, that at the hearing before the State Personnel Board her guilt of participation in the writing of the above mentioned anonymous letters was inferred by the Board from her failure to testify and this, she says, amounts to an impairment of her constitutional protection against self-incrimination. The record does not show any claim of this constitutional privilege by the petitioner at the hearing before the State Personnel Board. She simply remained silent, neither admitting nor denying participation in the writing and sending of such letters nor offering any explanation of or refutation of the opinion of the Commission's expert witness that the letters were typed on the same typewriter as other documents, shown by another witness to have been typed upon the typewriter of the petitioner.

In *Baxter v. Palmigiano,* ____ U.S. ____, 96 S.Ct. 1551, 47 L.Ed. 2d 810 (decided 20 April 1976), the Supreme Court of the United States had before it for review disciplinary action taken by prison authorities of California against an inmate who remained silent at his administrative hearing. The Court said:

> "Our conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause.' 8 Wigmore, Evidence 439 (McNaughton Ed. 1961). * * * The short of it is that permitting an adverse inference to be drawn from an inmate's silence at his disciplinary proceedings is not, on its face, an invalid practice; and there is no basis in the record for invalidating it as applied to Palmigiano in this case."

At the time of the petitioner's discharge, the hearing by the State Personnel Board and the review of the matter by the Superior Court, G.S. 126-1 to G.S. 126-6 (repealed, effective 1 February 1976, by Session Laws of 1975, Ch. 667) established a State Personnel System but contained no provision conferring tenure upon State employees. G.S. 126-4 provided:

> "*Powers and duties of State Personnel Board.*—Subject to the approval of the Governor, the State Personnel

Board shall establish policies and rules governing each of the following:

\*   \*   \*

"(6) The appointment, promotion, transfer, demotion, suspension, and separation of employees.

\*   \*   \*

"(9) Hearing of appeals of applicants, employees, and former employees and the issuing of *advisory recommendations* in all appeal cases. (Emphasis added.)

"(10) Such other programs and procedures as may be necessary to promote efficiency of administration and provide for a fair and reasonable system of personnel administration."

The Personnel Manual, in effect at the time of the actions of which the petitioner complains, contains no rule or other provision limiting the authority of the head of a department of State Government to dismiss an employee. In § 16.190, it provided:

*"Disciplinary action:* Any action taken *at the discretion of the department head* for the purpose of penalizing an employee by any one or combination of the following: (a) suspension from the payroll on leave—without—pay for a period to be determined by the department head, (b) transfer, (c) demotion, or (d) dismissal." (Emphasis added.)

[4]    Clearly, G.S. 126-4(9) authorized the State Personnel Board, upon an appeal to it by a dismissed employee, to do no more than make an advisory recommendation to the department head. It was not authorized to direct reinstatement of the dismissed employee.

The Employment Security Commission is authorized by G.S. 96-4(d) to appoint, fix the compensation and prescribe the duties and powers of its employees. Nothing in the Employment Security Law (G.S. Ch. 96) confers tenure upon employees of the Commission. The Employment Security Law, in G.S. 96-4(m), provides for the holding of hearings by the Commission "for the purpose of determining the rights, status and liabilities of any 'employing unit' or 'employer'" as defined by the law. From such determination a dissatisfied party may appeal to the Superior Court. Even in those hearings, it is provided

by G.S. 96-4(p), "The Commission shall not be bound by common-law or statutory rules of evidence or by technical or formal rules of procedure but shall conduct hearings in such manner as to ascertain the substantial rights of the parties." Both the Administrative Procedure Act, G.S. Ch. 150A and Art. 33A of Ch. 143 of the General Statutes, entitled, "Rules of Evidence in Administrative Proceedings Before State Agencies," which latter provision was in effect at the time of the matters of which the petitioner complains, though subsequently repealed effective 1 February 1976, expressly exempt the Employment Security Commission from their provisions. G.S. 150A-1; G.S. 143-317(1)..

[5] Article 33 of Ch. 143 of the General Statutes, entitled, "Judicial Review of Decisions of Certain Administrative Agencies," which was in effect at the time of the actions of which the petitioner complains, though subsequently repealed, effective 1 February 1976, defines "Administrative Agency" to include any State commission or department authorized by law to make administrative decisions, "except [among others] those * * * whose administrative decisions are made subject to judicial review under some other statute or statutes containing adequate procedural provisions therefor." As noted above, G.S. 96-4 makes provision for judicial review of administrative decisions of the Employment Security Commission determining the rights, status and liabilities of "employing units" and "employers." Thus, those determinations by the Employment Security Commission are not subject to judicial review under the provisions of Art. 33 of Ch. 143 of the General Statutes. Furthermore, that Article provides for judicial review of "administrative decisions," which term is defined to mean "any decision, order, or determination rendered by an administrative agency in a proceeding in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an opportunity for agency hearing." We think it clear that this statute does not contemplate judicial review of a simple administrative action such as the employment, promotion, demotion or discharge of an employee, but contemplates a determination of rights and duties of persons, organizations or corporations subject to the regulatory authority of the agency. Thus, unless the petitioner had a constitutional right to an agency hearing prior to her dismissal, the action of the Employment Security Commission in discharging her was not subject to judicial review and its motion to dismiss should have been allowed by the Superior Court.

[4]   The Superior Court was clearly correct in dismissing the proceeding as to the State Personnel Board. The authority of that Board was expressly limited by statute to the making of an advisory recommendation. Thus, its determination was not an "administrative decision" as defined by G.S. 143-306 and so was not subject to judicial review pursuant to G.S. 143-307. The State Personnel Board did not discharge the petitioner or take any action depriving her of any property or contract right. The action of which the petitioner complains was taken by the Employment Security Commission, her employer. It was an administrative act but not an "administrative decision" subject to judicial review under Art. 33 of Ch. 143 of the General Statutes, unless the petitiner was entitled as a matter of constitutional right to an agency hearing prior to her discharge.

[6]   We think it clear that the petitioner was not entitled, as a matter of constitutional right, to such a hearing. The petitioner contends that she has been deprived of a property right without a hearing in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and in violation of the similar provision of Art. I, § 19, of the Constitution of North Carolina. We disagree.

In the very recent case of *Bishop v. Wood,* _____ U.S. _____ , _____ S.Ct. _____ , _____ L.Ed. 2d _ _ _ (decided 10 June 1976), the Supreme Court of the United States said the sufficiency of such claim of property right in public employment must be decided by reference to state law, citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972), where the Court said:

> "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits."

As above noted, nothing in the law of this State or in the petitioner's contract of employment created any such right in the plaintiff. Consequently, as the Court said in *Bishop v. Wood, supra,* "Petitioner's discharge did not deprive [her] of a property interest protected by the Fourteenth Amendment." In *Board of Regents v. Roth, supra,* the Court held that the university professor, without tenure, did not have a constitutional

right to a statement of reasons and a hearing on a state university's decision not to rehire him for another year.

The petitioner also contends that she has been deprived of liberty without a hearing and, therefore, without due process of law. In *Board of Regents v. Roth, supra,* the Court said:

> "The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' * * * In such a case, due process would accord an *opportunity to refute the charge before university officials.* In the present case, however, there is no suggestion whatever that the respondent's interest in his 'good name, reputation, honor, or integrity' is at stake.

> "Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. * * *

> "Hence, on the record before us, all that clearly appears is that the respondent was not rehired for one year at one university. It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."

In *Bishop v. Wood, supra,* with reference to the claim of deprivation of liberty without procedural due process, the Court said:

> "Petitioner's claim that he has been deprived of liberty has two components. He contends that the reasons given for his discharge are so serious as to constitute a stigma that may severely damage his reputation in the community; in addition, he claims that those reasons were false. * * *

Nantz v. Employment Security Comm.

"In *Board of Regents v. Roth,* 408 U.S. 564, we recognize that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far 'to suggest that a person is deprived of "liberty" when he simply is not retained in one position but remains as free as before to seek another.' * * * *This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge.*

"In this case the asserted reasons for the City Manager's decision were communicated orally to the petitioner in private and also were stated in writing in answer to interrogatories after this litigation commenced. Since the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honesty, or integrity' was thereby impaired. And since the latter communication was made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim. * * *

"Petitioner argues, however, that the reasons given for his discharge were false. Even so, the reasons stated to him in private had no different impact on his reputation than if they had been true. And the answers to his interrogatories, whether true or false, did not cause the discharge."

In the present case, the action of the Employment Security Commission was not such as would damage the petitioner's good name in the community or bar her from other employment. In fact, the record shows that the Commission offered her other employment in another office of the Commission and discharged her only when she refused the transfer. Having ample evidence, from which it might infer the petitioner's participation in or knowledge of the writing of letters implying serious misconduct by her fellow employees, the writing of which letters, in the opinion of the Director of the Commission, jeopardized the efficient operation of the office in which the petitioner was employed, the Commission removed the petitioner

from that office because of her refusal to assist the Commission in determining the responsibility for such letters. The action of the Commission was not made public by it.

We find in this record no basis for holding that the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, or the comparable provision of the State Constitution, conferred upon the petitioner a right to a hearing by the Employment Security Commission before it discharged her. However, the record clearly shows that the petitioner, before her discharge, or her prior suspension, was fully informed by the Director of the Commission of the nature of the conduct of which she was suspected and of the evidence of her participation therein. Before the State Personnel Board, the hearing attended by her, the Director of the Commission and the witnesses against her, she was again fully informed of these matters and had the opportunity to cross-examine these witnesses, which she did, and to present any refutation, defense or explanation she thought proper. She declined to make any comment whatever.

We find no basis in this record for a conclusion that any right of the petitioner under the Constitution of the United States, the Constitution of North Carolina, the statutes of this State, or her contract of employment has been violated by her discharge.

The petitioner undertook to appeal from the decision of the Court of Appeals on the ground that Judge Vaughn dissented therefrom and on the ground that substantial constitutional questions were involved in the decision. Judge Vaughn did not dissent, but filed an opinion which, in effect, concurred in the result reached, for the reason that the Superior Court had no jurisdiction and the appeal to the Court of Appeals should have been dismissed, which view is in accord with our own, hereinabove expressed. Thus, the opinion of Judge Vaughn, though inaptly designated a dissent, did not constitute a ground for appeal to this Court under G.S. 7A-30. Nevertheless, because of the constitutional question raised, the petitioner had standing to appeal to this Court under that statute.

Affirmed.