Robert BURNS, Plaintiff,

v.

Glenn BRINKLEY, Sheriff of Currituck County and in his official capacity as Sheriff of Currituck County and individually, and Currituck County, a body corporate and politic, Defendants.

No. 2:95–CV–51–BO(1).

United States District Court,
E.D. North Carolina,
Northern Division.

Aug. 1, 1996.

Ronald E. DeVeau, DeVeau & Norcross, Kill Devil Hills, NC, for plaintiff.

Elizabeth J. Hallyburton, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, for defendants.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

Plaintiff Robert Burns had served as a Currituck County Deputy Sheriff for twelve years at the time of the 1994 elections for Currituck County Sheriff. Six candidates ran for the position of Currituck County Sheriff that year, all as Democrats. The first primary election narrowed the field for a May 31 run-off primary election between Dean Cartwright and defendant Sheriff Glenn Brinkley, which the latter won. Plain-

tiff had supported Mr. Cartwright financially and actively campaigned for the losing candidate. In October of 1994, defendant Brinkley allegedly told plaintiff that the Sheriff's Department would be better off without him. Brinkley was elected Sheriff as an unopposed candidate in the November, 1994 general election.

Defendant Brinkley was sworn in as Sheriff on December 5, 1994. On the same day, plaintiff was sworn in as a Deputy Sheriff for the new term. Later that day, however, the defendant allegedly obtained the written oath of office administered plaintiff by the clerk of court and tore it up. Defendant admits he fired plaintiff the day he was sworn in as Sheriff.

Plaintiff subsequently brought this complaint, alleging that Sheriff Brinkley fired him in retaliation for his protected First Amendment activity in violation of 42 U.S.C. § 1983. Plaintiff also alleges that in doing so, defendant Brinkley deprived him of a substantive due process right in continued employment as a Deputy Sheriff. The amended complaint further purports to set forth a cause of action under N.C.Gen.Stat. § 163–271, claims violations of various provisions of the North Carolina Constitution, and that his termination constituted a wrongful discharge contrary to public policy.

The defendants have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. Rule 12(b)(6). Subsequently, the defendants also moved for summary judgment. The latter motion is now moot, as the motion to dismiss must be allowed.

\* \* \* \* \* \*

*The Due Process Claim*

There is some confusion among the parties as to the scope and nature of substantive due process rights. Defendants claim that plaintiff cannot assert a substantive due process deprivation without first identifying a property interest created by state law. Plaintiff disagrees, citing a number of cases that have found violations of substantive due process rights without regard to any recognized property interests.

**A.**

The disagreement stems from an incomplete understanding of the distinction between liberty interests and property rights. The right to pursue employment must be distinguished from the right to maintain a specific job. Both rights are protected by the Fourteenth Amendment, but are derived from different sources and differ significantly in nature. The right to pursue a livelihood without undue interference is an individual right recognized by the Constitution as inherent in the concept of liberty. It is thus in the nature of a "liberty interest" of the type "founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir.1986). This Court has recently had occasion to discuss the substantive due process liberty interest in pursuing employment:

In protecting against undue deprivations of liberty, the Fourteenth Amendment "affords not only a procedural guarantee against the deprivation of 'liberty,' but likewise protects substantive aspects of liberty against unconstitutional restrictions by the State." *Kelley v. Johnson,* 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976) (citations omitted). It is beyond dispute that an important aspect of individual liberty is the right to pursue a livelihood and engage in the common occupations of life. "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915); *Greene v. McElroy,* 360 U.S. 474, 494, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) (citations omitted) ("the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment."); *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Meyer v. Nebraska,*

262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *Smith v. Texas,* 233 U.S. 630, 636, 34 S.Ct. 681, 682, 58 L.Ed. 1129 (1914); *Dent v. West Virginia,* 129 U.S. 114, 121, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889); *Cowan v. Corley,* 814 F.2d 223, 227 (5th Cir.1987); *United States v. North Carolina,* 914 F.Supp. 1257, 1269–70 (E.D.N.C.1996); *Santos v. City of Houston, Tex.,* 852 F.Supp. 601, 607 (S.D.Tex. 1994).

*Pierce v. King,* 918 F.Supp. 932, 941 (E.D.N.C.1996). This right is most often implicated when the government takes some regulatory action which exceeds the proper scope of the police power, restraining without adequate justification the right of the individual to work for a living or otherwise engage in economically productive activity.

■■■ By contrast, the right to maintain a particular employment or career is a right of property. The individual often has a property interest recognized by state law in his occupation or established professional practice. That right, once recognized by state law, is entitled to the Due Process Clause's protection of property rights. It may not be extinguished absent procedural protection and substantive justification, and even then, may require compensation. *See, i.e. Stephan v. Smith,* 242 Kan. 336, 747 P.2d 816 (1987) (attorney's services are property subject to Takings Clause protection).

■■■ The Constitution does not create rights, but it does recognize rights and affords them protection. It recognizes and protects the individual's inherent rights to liberty,[1] as well as any property rights sanctioned by the state as the products of that liberty. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), *quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "The

Fourteenth Amendment does not itself create property rights but rather affords a protection to them." *Linton v. Frederick County Bd. of County Com'rs,* 964 F.2d 1436, 1438 (4th Cir.1992).

**B.**

■■■ The right implicated in the present case would be a property right. Plaintiff does not complain that the defendants have prevented him from pursuing employment which he is entitled to pursue as a core element of his liberty. Rather, plaintiff complains that he had some interest in remaining a Deputy Sheriff.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Pittman v. Wilson County,* 839 F.2d 225, 227 (4th Cir.1988) (per Justice Powell). The Court must therefore look to the law of North Carolina to see if the state recognizes plaintiff's possession of a right to continued public employment.

**C.**

■■■ The North Carolina Supreme Court has held that an enforceable expectation of continued public employment in that State can exist only if the employer, by statute or contract, has actually granted some form of guarantee. *Still v. Lance,* 279 N.C. 254, 182 S.E.2d 403 (1971).

*Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). "Under North Carolina law, an employee has a property interest only if he has a legitimate claim to continued employment under either a contract, a state statute, or a local ordinance." *Dunn v. Town of Emerald Isle,* 722 F.Supp. 1309, 1311 (E.D.N.C.1989), *aff'd,* 918 F.2d 955 (4th Cir.1990); *Reid v. White,* 703 F.Supp. 428 (W.D.N.C.1988); *Presnell v. Pell,* 298 N.C. 715, 723–24, 260 S.E.2d 611

---

**1.** The Constitution does not provide an exhaustive list of liberty interests. U.S. Const., amends. IX, XIV.

(1979); *Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357 (1987); *Kearney v. County of Durham*, 99 N.C.App. 349, 351, 393 S.E.2d 129 (1990); *Pittman*, 839 F.2d at 227.

The question of whether a sheriff's deputy has a property interest in continued employment has been definitively answered. "Each sheriff ... has the exclusive right to hire, discharge, and supervise the employees in his office." N.C.Gen.Stat. § 153A–103(1). "Each deputy ... shall serve at the pleasure of the appointing officer." N.C.Gen.Stat. § 153A–103(2). Relying on these clear statutory provisions, the North Carolina Court of Appeals has held that Deputy Sheriffs enjoy no property right in continued employment. *Peele v. Provident Mut. Life. Ins. Co.*, 90 N.C.App. 447, 451, 368 S.E.2d 892 (1988); *accord Joyner v. Lancaster*, 553 F.Supp. 809, 816 (M.D.N.C.1982), *aff'd*, 815 F.2d 20 (4th Cir.1987) ("Under state law the sheriff has the exclusive right to fire any deputy in his office. Deputies work at the pleasure of the sheriff.") (citation omitted).

Plaintiff concedes that he was not guaranteed permanent employment, and that there exists no statutory or contractual impediment to his termination. Instead, plaintiff claims that the "statutory compensation and retirement package" he describes as "generous,"

> coupled with the general custom and practice of the sheriff's department to continue employment unless there is poor performance or good cause for dismissal created an environment of common expectation that employment would be continued.

(Memo. in Opposition to Motion to Dismiss, p. 5). Plaintiff claims that his dismissal tarnished his reputation "and destroyed his accrued retirement credits such to establish a property interest in continued employment." *Id.*

The argument must be rejected. "Employment by the State of North Carolina, or by one of its political subdivisions or agencies, does not *ipso facto* confer tenure or a property right in the position." *Nantz v. Employment Security Comm.*, 290 N.C. 473, 477, 226 S.E.2d 340 (1976) (citations omitted). Absent the necessary statutory or contractual basis, plaintiff simply cannot establish a property right to continued employment. The fact that North Carolina has established a generous pension system for its public employees as part of its compensatory and incentive package does not confer upon those employees a property interest in continued employment. The programs cited by plaintiff are merely part of the consideration forming the basis for public employment contracts, and do not alter the at-will nature of such employment relationships.

Nor would a custom or practice of terminating employees only for good cause somehow alter the at-will nature of an employment relationship. Employers need not from time to time exercise their option to terminate employees at will in order to maintain their right to do so in the future. The at-will employment doctrine does not contemplate a certain frequency with which employment relationships will be terminated. As the Fourth Circuit has noted, the law of North Carolina does not recognize expectations of continued employment as arising from custom or practice. *Pittman*, 839 F.2d at 228 n. 6. "It is well established in this State that a contract of employment for an indefinite term is terminable at the will of either party, *irrespective of the quality of performance.*" *Peele*, 90 N.C.App. at 451 (citation omitted) (emphasis added). "Mere longevity of employment, even though the employee's service be of excellent quality, does not confer upon the employee such property right." *Nantz*, 290 N.C. at 477, 226 S.E.2d 340 (citation omitted). "The fact that plaintiff was employed by a political subdivision of the state does not itself entitle [him] to tenure, nor does the mere longevity of [his] prior service." *Presnell*, 298 N.C. at 724, 260 S.E.2d 611, *citing Nantz*. Directly on point is *Robertson v. Rogers*, 679 F.2d 1090, 1091 (4th Cir.1982), where "[t]he fact that [plaintiff public employee] was employed for eleven years, pursuant to a series of two-year contracts, [was] not sufficient to create a protected property interest in continued employment."

Finally, the reputational interest plaintiff cites cannot confer upon him a property right under state law. The mere fact of

his discharge might make more difficult his ability to seek work in the future, and so at best, implicates his liberty interest. "The right of a citizen to live and work where he will is offended when a state agency unfairly imposes some stigma or disability that will itself foreclose the freedom to take advantage of employment opportunities." *Presnell*, 298 N.C. at 724, 260 S.E.2d 611, *citing Roth*. However, "the failure to allege that the reasons for the dismissal were published dooms this claim." *Loudermill*, 470 U.S. at 547 n. 13, 105 S.Ct. at 1496 n. 13, *citing Bishop*, 426 U.S. at 348, 96 S.Ct. at 2079.

*The First Amendment Claim*

 The mere fact that a deputy serves at the pleasure of the Sheriff does not mean that the Sheriff may impose unconstitutional conditions upon the deputy's employment. "[S]heriffs can neither impose unconstitutional conditions upon public employment such as requiring employees to relinquish their rights of free speech and association nor discharge employees for a constitutionally infirm reason." *Joyner*, 553 F.Supp. at 816 (citation omitted).

 Civil service employees whose political beliefs or activities are unrelated to their job description are protected by the First Amendment from termination due to such beliefs or activities. Political affiliation is, however, an essential requirement for the performance of some government jobs whose nature is to effect the democratically determined political policy choices of the electorate. Therefore, where "party affiliation is an appropriate requirement for the effective performance of the public office involved," the First Amendment is not offended by a politically motivated dismissal. *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980); *McConnell v. Adams*, 829 F.2d 1319, 1324 (4th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). Although the present case does not involve partisan politics, as both plaintiff and defendant Brinkley are members of the Democratic Party, the First Amendment analysis is identical where nonpartisan or intra-party politics are concerned. The court in *Joyner* stated the test well:

Where differing political beliefs of a person have the potential to undermine the ability of that person to perform his duties fully or his ability to serve his employer to the employer's legitimate satisfaction, then political affiliation becomes an appropriate requirement for the effective performance of the office. The issue is not whether the duties and powers conceivably could be exercised by qualified persons irrespective of their political affiliation, but whether differing political persuasions predictably could thwart the implementation of policies of an elected official.

*Joyner*, 553 F.Supp. at 818 (citation omitted).

 The *Joyner* case is squarely on point, and its reasoning is persuasive. In *Joyner*, plaintiff was a twenty year veteran of the Forsyth County, North Carolina Sheriff's Department who made the unfortunate choice of breaking with the incumbent sheriff to support a challenger in the Democratic Party primary. When the incumbent prevailed, he fired the plaintiff. The Middle District of North Carolina rejected the plaintiff's First Amendment claim, and the Fourth Circuit affirmed. "Without the trust or confidence of his superiors and peers in the Department the plaintiff cannot be expected to fully perform all the duties of his office or exert anything other than a negative influence on the Department." *Joyner*, 553 F.Supp. at 818.

Accepting all of plaintiff's allegations as true, this is not the case of a civil servant terminated from his position to clear an office for patronage. The question is whether an elected official must, by reason of the First Amendment, endure a close working relationship with an inferior otherwise serving at his pleasure who has publicly campaigned against the superior official's presence in office. Had plaintiff confronted the Sheriff directly and expressed his opinion that the Sheriff is unfit for office, the Sheriff would be entitled to terminate him for insubordination. The Sheriff can hardly be expected to act differently because the challenge to his authority was public.

*Miscellaneous Issues*

The plaintiff having failed to state a valid federal controversy, the Court elects to decline jurisdiction over the remaining state law claims. It is also unnecessary to address the dispute as to whether the County is a proper defendant to this action.

\* \* \* \* \* \*

The motion to dismiss is GRANTED. The action is hereby DISMISSED WITH PREJUDICE to the federal causes of action for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. Rule 12(b)(6), and WITHOUT PREJUDICE to the claims under state law.

IT IS ORDERED.