ROGER DALE CLARY v. ALEXANDER COUNTY BOARD OF EDUCATION

── AND ──

PHYLLIS CLARY, Administratrix of the Estate of FRED H. CLARY v. ALEXANDER COUNTY BOARD OF EDUCATION

No. 12

(Filed 10 April 1974)

1. Parent and Child § 5— injury to minor — rights of action
    Personal injury to an unemancipated minor child, proximately caused by the negligence of another, may give rise to two causes of action, one on behalf of the child for recovery of damages for personal injury, including damages for pain and suffering, for permanent injury and for impairment of earning capacity after majority, and the other by the parent for loss of services of the child during minority and for reimbursement for expenses incurred by the parent for necessary medical treatment of the child.

2. Parent and Child § 5— injury to minor — parent's action to recover medical expenses — insufficiency of evidence
    In a father's action against a county board of education to recover for medical and hospital expenses allegedly incurred by him in the

Clary v. Board of Education

treatment of injuries sustained by his minor son, the father's evidence was insufficient to be submitted to the jury where no evidence was presented to show the amount of any medical or hospital bill or any payment by plaintiff father, or by anyone else, for treatment of his injured son, or the incurring of liability therefor by the father.

3. Schools § 11; State § 6— county board of education — liability for torts — waiver of immunity

No action can be maintained against a county board of education to recover damages for a tort alleged to have been committed by it in the performance of its statutory duties except insofar as its immunity to such suit has been waived pursuant to statutory authority.

4. Schools § 11; State § 6— actions against school board — failure to show waiver of immunity

Plaintiffs' evidence was insufficient to be submitted to the jury in actions against a school board by a father to recover medical expenses expended in the treatment of injuries received by his minor son during basketball practice in the school gymnasium and by the son to recover damages for his personal injuries where there was no evidence that defendant board of education, at the time of the injuries in question, had procured liability insurance so as to waive its immunity to suit for tort as permitted by G.S. 115-53.

ON *certiorari* to the Court of Appeals to review its decision, reported in 19 N.C. App. 637, 199 S.E. 2d 738, affirming the judgment of *Winner, S.J.,* at the 9 April 1973 Session of ALEXANDER.

Roger Dale Clary sued for damages for personal injuries. This action was instituted by Fred H. Clary, his father, as guardian ad litem, but, Roger Dale Clary having become of age prior to trial, the action was thereafter prosecuted by him.

Fred H. Clary sued to recover sums expended by him for medical and hospital expenses incurred by him in the treatment of the injuries sustained by his minor son, Roger Dale Clary. Fred H. Clary having died prior to trial, his administratrix was substituted as the party plaintiff in that action.

The cases were consolidated for trial and, at the conclusion of the plaintiff's evidence, the defendant's motions for directed verdicts were granted and each action was dismissed, with prejudice, on the ground that the evidence showed, as a matter of law, that Roger Dale Clary was contributorily negligent.

Each complaint alleges that Roger Dale Clary was injured on 8 October 1968, at which time he was a student at Stony Point High School and, while engaging in basketball practice

under the supervision of the coach, ran into and through a glass window, or partition, in the school gymnasium. The defendant is alleged to have been negligent in that: (a) It permitted the installation of such glass partition when it knew or should have known that it constituted a severe hazard to basketball players, (b) through its coaching staff, it directed players on the basketball team to run sprints toward a point immediately in front of the partition, and (c) it maintained the gymnasium in a hazardous condition with respect to such partition.

Each complaint was amended to allege that the defendant had procured liability insurance against negligence or other tortious conduct and had waived its immunity from suit for such conduct in accordance with G.S. 115-53. As to this allegation, the answer in each case alleged: "The allegations of Paragraph XVIII (XV in the suit of the father) of the Complaint as amended, are *not* admitted, to the extent that they apply to the incident in question." (Emphasis added.)

The record on appeal contains no stipulation as to the amount of any medical or hospital expense paid or incurred by Fred H. Clary by reason of the injuries sustained by his son, Roger Dale Clary, and contains no evidence with reference to such expense, although there was testimony that immediately following the injuries a doctor was summoned and Roger Dale Clary was carried to a hospital in a pickup truck. The complaint of Fred H. Clary alleges that he incurred such expenses in the amount of $2,656. The answer denies the allegation for lack of sufficient information and knowledge to answer the same.

There is no evidence in the record concerning liability insurance carried by the defendant or otherwise tending to show a waiver by the defendant of its immunity from suit for torts.

The evidence for the plaintiff was to the following effect:

On 8 October 1968, Roger Dale Clary, a seventeen year old senior student in the Stony Point High School, was in the school gymnasium as a candidate for the school basketball team. He and other candidates for the team, by direction of and under the supervision of the coach, engaged in conditioning exercises, including windsprints.

The gymnasium was slightly longer and somewhat wider than a basketball court. At each end of the court, there was a space of approximately three feet between the end line of the

court and the end wall of the room. The wall at the back end of the room was solid brick. Immediately behind the basketball goal at this end of the room, there was suspended and hanging against the wall a gymnasium mat, to protect the players against injury from running against the wall. At the opposite or front end of the room there were no mats. At that end, immediately behind the basketball goal, were two double swinging doors, providing ingress and egress to the building, each door having a center glass panel. Adjoining these doors on each side was a large, glass window, beginning about three feet from the floor and extending to the top of the doorway. Glass panels, or transoms, were also over each window and each door. All of the glass was what is known as wire glass, having small "chicken" wire enclosed within the glass itself.

On the occasion of the injury, the members of the basketball squad were arranged in four lines, beginning at or just outside of the end line of the basketball court and extending back to the doors or windows and then alongside such doors or windows as required by the length of the line of boys. Roger Dale Clary was in the line in front of one of the windows. The windsprints ordered by the coach required the front boy in each line to run, at full speed, to the opposite end of the court and then back, at full speed, to touch the hand of the next boy in line, who would then take off on a similar sprint, the boy who had concluded his sprint then taking his place at the back end of the line to await another turn.

On his first such sprint that afternoon, Roger Dale Clary, running at full speed, touched the hand of the next boy in line and endeavored to stop but was unable to do so until he crashed into the glass window and shattered it, sustaining severe cuts on his arm and body.

On other occasions both Roger Dale Clary and other players, as well as the coach, himself, had, while engaging in windsprints and when driving toward the basket for "layups," run into these doors and windows, but no one had ever before shattered the glass. Roger Dale Clary had been on the school basketball team for three years prior to this occurrence, playing in the same gymnasium. He had seen other boys run into the window, not being able to stop before striking it.

On previous occasions, the school janitor had replaced sections of glass which had been cracked. These were in the tran-

soms above the doors or windows and the glass had been broken on those occasions by thrown basketballs. On each former occasion when cracked panels of glass were replaced, the janitor replaced them with the same type of glass; that is, wire glass. At the time of this incident, other types of glass, less likely to shatter into jagged pieces, were available. Wire glass is not "safety glass." Its principal function is to make it more difficult for an intruder to enter a building by breaking a pane of glass, since such intruder would also have to cut through the wire. On the occasion in question, Roger Dale Clary's arm, head and upper body went through the glass and wire, leaving jagged fragments of the glass panel which apparently were the cause of the severe injuries.

On this occasion, the coach in charge of the exercises ordered the boys to engage in windsprints. He testified that the boys were supposed to run on the gym floor at full speed from one end line of the court to the other and back. He had observed other players collide with the glass on other occasions and had done so himself. He never warned any of the players about the glass at the front end of the gymnasium.

*Collier, Harris, Homesley & Jones by Jack R. Harris and Edmund L. Gaines for plaintiffs.*

*Hedrick, McKnight, Parham, Helms, Warley & Kellam by Philip R. Hedrick and Edward L. Eatmon, Jr.; Frank & Lassiter by Jay Frank and Michael T. Lassiter for defendant.*

LAKE, Justice.

[1] It is well settled that a personal injury to an unemancipated minor child, proximately caused by the negligence of another, may give rise to two separate and distinct causes of action. The first is on behalf of the child for the recovery of damages for the personal injury, including damages for pain and suffering, for permanent injury and for impairment of earning capacity after majority. The second is a right in the parent of the child (usually the father) to recover damages for the loss of services of the child during minority and for reimbursement for expenses incurred by the parent for necessary medical treatment of the child. *Kleibor v. Rogers,* 265 N.C. 304, 144 S.E. 2d 27; *Ellington v. Bradford,* 242 N.C. 159, 86 S.E. 2d 925; Strong, N. C. Index 2d, Parent and Child, § 5.

Clary v. Board of Education

In this instance, the action on behalf of the child and that brought by the father in his own right were consolidated for trial. At the close of the plaintiffs' evidence, the defendant moved for a directed verdict in its favor in each action on three grounds: (1) The evidence was insufficient to justify the submission of the case to the jury, (2) the evidence was insufficient to show actionable negligence on the part of the defendant, and (3) the plaintiff was negligent as a matter of law so as to bar any claim for damages against the defendant.

In each action, the Superior Court granted the defendant's motion for a directed verdict on the ground that the child was guilty of contributory negligence. There was neither allegation nor evidence of contributory negligence by the father himself or that the child, at the time of the injury, was acting as the father's agent.

By reason of the deficiencies noted below in the proof supplied by the plaintiffs, the motion for a directed verdict should have been allowed in each case on the first ground stated in the motion. This being true, we do not reach and we express no opinion upon these questions: (1) Was the plaintiffs' evidence sufficient to support a finding of negligence by the defendant in the construction of the building, or in its maintenance or in instructing, through its employees, the basketball coach, this high school student to engage in the activity which resulted in his injury? (2) Did the evidence of the plaintiffs show that the plaintiff child, in carrying out his assignment, was guilty of contributory negligence as a matter of law? (3) If so, does such contributory negligence of the child bar the father's right to recover in his action?

It is correctly stated in 67 CJS 2d, Parent and Child, § 41(c), "The parent has no right of action unless he has sustained some direct pecuniary injury from the wrong done to the child." The burden is on the plaintiff father to allege and show that he has been damaged, through the loss of the child's services or through his having to pay or incur liability for medical treatment of the child's injuries. The complaint of the father alleges that he incurred expenditures for such medical treatment in the amount of $2,656, the recovery of which he prays. The answer of the defendant denies this allegation.

[2] There is in the record no evidence whatsoever to show the amount of any medical or hospital bill or any payment by the

plaintiff father, or by anyone else, for medical or hospital treatment of his injured son, or the incurring of liability therefor by the father. Nothing in the record, or in the briefs of the parties in the Court of Appeals or in this Court, suggests any stipulation of the parties with reference to this matter. There is, therefore, in the record before us a complete failure of evidence to show any damage suffered by the plaintiff father by reason of the alleged negligence of the defendant. Consequently, the plaintiffs' evidence was not sufficient to justify submitting the father's case to the jury.

[3]   Furthermore, the defendant Board of Education is a governmental agency created by statute for the purpose of performing governmental functions. *Benton v. Board of Education,* 201 N.C. 653, 161 S.E. 96. That being true, no action can be maintained against it to recover damages for a tort alleged to have been committed by it in the performance of its statutory duties, except insofar as its immunity to such suit has been waived pursuant to statutory authority. *Huff v. Board of Education,* 259 N.C. 75, 130 S.E. 2d 26; *McBride v. Board of Education,* 257 N.C. 152, 125 S.E. 2d 393; *Fields v. Board of Education,* 251 N.C. 699, 111 S.E. 2d 910; *Turner v. Board of Education,* 250 N.C. 456, 109 S.E. 2d 211; *Smith v. Hefner,* 235 N.C. 1, 68 S.E. 2d 783; *Benton v. Board of Education, supra.* "[I]n the absence of an allegation in the complaint in a tort action against a city board of education, to the effect that such board has waived its immunity by the procurement of liability insurance to cover such alleged negligence or tort, or that such board has waived its immunity as authorized in G.S. 115-53, such complaint does not state a cause of action." *Fields v. Board of Education, supra.* In this respect there is no distinction to be drawn between a county board of education and a city board of education. *A fortiori,* when such allegation in the complaint is denied by the answer, the burden is upon the plaintiff to prove the requisite waiver.

[4]   By an amendment to his complaint, the plaintiff father alleged that the defendant had waived its immunity to suit for tort by procuring liability insurance as authorized in G.S. 115-53. The answer of the defendant to this allegation was: "The allegations of Paragraph XV of the Complaint, as amended, are *not* admitted, to the extent that they apply to the incident in question." (Emphasis added.) There is no evidence whatsoever in the record to show that the defendant Board of Educa-

tion, at the time of the injury in question, had procured liability insurance so as to waive its immunity to suit as permitted by G.S. 115-53. The Tort Claims Act, G.S. 143-291 through G.S. 143-300.1, has no application to an injury of the kind here in question. Thus, there was a complete failure of evidence to show an indispensable element of the plaintiff father's right to recover in this action. For this reason also, the plaintiffs' evidence was insufficient to justify the submission of the case of the father to the jury and the motion for a directed verdict in favor of the defendant should have been granted.

In the suit brought on behalf of the injured boy by his next friend, the plaintiff also alleged, by an amendment to his complaint, that the defendant Board of Education had waived its immunity to suit for tort by the procurement of liability insurance as authorized by G.S. 115-53. The answer of the defendant, with reference to this allegation, was identical to the above quoted answer to the like allegation in the complaint of the father. The cases having been consolidated for trial, the evidence is the same as to each action. Thus, in the suit of the injured boy also, there is a complete failure of evidence to show a waiver by the defendant of its immunity to such action. For this reason, the evidence of the plaintiffs was insufficient to justify the submission of the boy's action to the jury and the defendant's motion for a directed verdict should have been allowed on this ground.

Although the Superior Court and the Court of Appeals inadvertently failed to note the insufficiencies of the plaintiffs' evidence in the respects herein set forth, the granting of the motion for a directed verdict in favor of the defendant was proper in each case and the judgment will not be disturbed.

Affirmed.