MARY ALICE PRESNELL v. JOE A. PELL, JR.; CLINTON W. MOSELEY; GROVER W. HANES, JR.; JAMES R. MARION; CLAUDE V. AYERS; FRED A. HOLDER; BILLY SMITH; DOYLE KEY; TALMAGE CROUSE; JAMES S. NIXON; INDIVIDUALS AND SURRY COUNTY BOARD OF EDUCATION; DENNIS SMITHERMAN, INDIVIDUALLY AND AS PRINCIPAL OF MOUNTAIN PARK ELEMENTARY SCHOOL; AND CHARLES C. GRAHAM, INDIVIDUALLY AND AS THE SUPERINTENDENT OF SURRY COUNTY SCHOOL SYSTEM

No. 38

(Filed 4 December 1979)

1. **Libel and Slander §§ 5.2, 9.1— allegations of slander per se—no qualified privilege**

    Plaintiff's complaint stated a claim for slander *per se* against defendant school principal where it alleged that defendant falsely accused plaintiff, a school cafeteria manager, of distributing alcoholic beverages on the school

premises, and that notwithstanding plaintiff's vigorous denial of these accusations and the rumors upon which they were based, defendant then maliciously and recklessly published the rumors to plaintiff's fellow employees. Furthermore, the complaint did not show that defendant's actions were qualifiedly privileged where it failed to reveal any facts which disclosed any duty on plaintiff's fellow employees who received the defamatory communication to inquire into and communicate about plaintiff's rumored conduct, and where allegations that defendant's actions were malicious and in bad faith served to negate the good faith element of qualified privilege.

**2. Libel and Slander § 13.2; Schools § 11— slander by school principal—no liability by superintendent and school board**

Where allegations of defamation related solely to the conduct of defendant school principal, the complaint was insufficient to impute liability to defendant school superintendent or to individual members of the county school board. Nor was the complaint sufficient to join defendant school board on the defamation claim under the doctrine of *respondeat superior* where there was no allegation that the school board had waived its immunity by procuring an applicable policy of liability insurance.

**3. Administrative Law § 2— exhaustion of administrative remedies**

As a general rule, when the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts, especially where the statute establishes a procedure whereby matters of regulation and control are first addressed by commissions or agencies particularly qualified for the purpose.

**4. Schools § 13.2— actions by school employees—administrative procedures—appeal to superior court**

Under G.S. 115-34, a party entitled to its provisions must first challenge action taken by school personnel by way of an appeal to the appropriate county or city board of education, and after a decision by the board "affecting one's character or right to teach," a party may then invoke the appellate jurisdiction of the superior court.

**5. Schools § 13.2— discharge of school employee—failure to exhaust administrative remedies—no jurisdiction in superior court**

The superior court had no jurisdiction to entertain plaintiff's claim for wrongful discharge from her employment as a school cafeteria manager where the alleged action of school personnel affected plaintiff's character, plaintiff was therefore entitled to invoke the hearing and appellate procedures provided by G.S. 115-34, and no appeal from the decision of the district school committee to terminate plaintiff's employment was taken to the county board of education.

**6. Constitutional Law § 23.4; Schools § 13.2— dismissal of school cafeteria manager—no proprietary interest affected**

The mere dismissal of plaintiff from her employment as a school cafeteria manager without a pre-termination hearing did not abridge a proprietary interest encompassed within the Due Process Clause of the Fourteenth Amendment.

7. **Constitutional Law § 23.4; Schools § 13.2— defamation related to dismissal of school employee—liberty interest—due process—right to hearing—procedures of G.S. 115-34**

> By alleging acts of defamation concurrent with and related to the termination of her employment as a school cafeteria manager, plaintiff's complaint sketched a colorable claim that a constitutionally protected "liberty" interest—the freedeom to seek further employment—may be at stake and may have stated a claim of right to an opportunity to be heard in a meaningful time, place and manner. However, due process is satisfied under these circumstances by providing plaintiff an opportunity to clear her name in a hearing of record *either* before her discharge *or* within a reasonable time thereafter, and the hearing and appeal procedures of G.S. 115-34 provided plaintiff a constitutionally effective set of administrative and judicial remedies.

APPEAL by plaintiff from dismissal of her complaint pursuant to G.S. 1A-1, Rule 12(b), by *Judge Kivett* at the 10 February 1978 Session of SURRY Superior Court. The dismissal was reversed by the Court of Appeals, opinion by *Judge Mitchell*, 39 N.C. App. 538, 251 S.E. 2d 692 (1979). Petition for discretionary review allowed pursuant to G.S. 7A-31 on 1 May 1979.

*Franklin Smith, Attorney for plaintiff-appellee.*

*Faw, Folger, Sharpe and White by Frederick G. Johnson, Attorneys for defendant-appellants.*

*Tharrington, Smith, and Hargrove, by George T. Rogister, Jr., and Carlyn G. Poole, Attorneys for North Carolina School Boards Association, Inc., amicus curiae.*

EXUM, Justice.

This is an action for slander and wrongful discharge from employment. The questions presented are whether (1) the complaint states a claim for relief for defamation and (2) the claim for wrongful discharge was properly dismissed for want of original jurisdiction. We answer both in the affirmative.

Plaintiff alleges by her complaint: Before her discharge on 13 December 1976 she was employed by defendant Surry County Board of Education as manager of the cafeteria at Mountain Park Elementary School. She had held this position for some fourteen years. During the first part of December, 1976, defendant Dennis Smitherman, principal of the elementary school, "falsely and with reckless disregard of the consequences" accused plaintiff of hav-

ing brought "liquor" onto the school premises and distributing it to painters then employed in the school cafeteria. Plaintiff denied the accusations and requested a confrontation with Smitherman's sources of information. Smitherman refused to identify his sources. Sometime before 13 December, Smitherman and defendant Charles Graham, Superintendent of the Surry County School System, called a meeting of the district school committee to discuss plaintiff's purported misconduct. Plaintiff was given no notice of this meeting. It was decided at the meeting to terminate plaintiff's employment. Plaintiff was dismissed by Smitherman on 13 December 1976. On or about the same date, Smitherman, "in bad faith, with malice, and with reckless disregard to the consequences" allegedly published the rumors regarding plaintiff to plaintiff's fellow employees. At no time prior to her discharge was plaintiff afforded a hearing.

Plaintiff filed this action on 22 March 1977 against defendants in their individual and official capacities seeking injunctive relief and damages for defamation and wrongful discharge. Instead of filing a responsive pleading to the complaint, defendants moved to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6) for failure of the complaint to state a claim upon which relief could be granted, and pursuant to G.S. 1A-1, Rule 12(b)(1) for lack of jurisdiction over the subject matter. The Superior Court, Judge Kivett presiding, granted both motions, holding: (1) the complaint failed to state a claim for defamation and (2) the court lacked subject matter jurisdiction over the claim for wrongful discharge in that the complaint revealed that plaintiff failed to comply with the provisions of G.S. 115-34.[1]

The Court of Appeals reversed. In an opinion by Judge Mitchell, that court held that plaintiff's complaint sufficiently set forth a claim for defamation. We agree that the complaint states a claim for defamation against Smitherman and accordingly remand

---

1. This statute provides:

"*Appeals to board of education and to superior court.*—An appeal shall lie from the decision of all school personnel to the appropriate county or city board of education. In all such appeals it shall be the duty of the board of education to see that a proper notice is given to all parties concerned and that a record of the hearing is properly entered in the records of the board conducting the hearing.

The board of education may designate hearing panels composed of not less than two members of the board to hear and act upon such appeals in the name and on behalf of the board of education.

An appeal shall lie from the decision of a county or city board of education to the superior court of the State in any action of a county or city board of education affecting one's character or right to teach."

the cause for further proceedings against Smitherman only. The Court of Appeals further held that plaintiff need not have followed the appeal procedures set out in G.S. 115-34 inasmuch as plaintiff was constitutionally entitled to notice and hearing *prior to* termination of her employment. We disagree. We hold that under the facts alleged by her complaint plaintiff has no constitutional right to an administrative hearing *prior to* discharge and that the procedures provided in G.S. 115-34 accord plaintiff due process.

A complaint is deemed sufficient to withstand a motion to dismiss under Rule 12(b)(6) where no insurmountable bar to recovery appears on the face of the complaint and the complaint's allegations give adequate notice of the nature and extent of the claim. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). A claim for relief should not suffer dismissal unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim. *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976). Guided by these rules, we proceed to examine plaintiff's allegations underlying her claim for defamation.

[1] The complaint alleges in substance: Smitherman falsely accused plaintiff of distributing alcoholic beverages on the school premises. Notwithstanding plaintiff's vigorous denial of these accusations and of the rumors upon which they were based, Smitherman then maliciously and recklessly published the rumors to plaintiff's fellow employees.

Taking these allegations to be true for the limited purpose of testing the adequacy of the complaint, we find that the plaintiff has stated a claim for slander *per se*. The rumors and accusations imputed reprehensible conduct to plaintiff and tended to prejudice her standing among her fellow workers, stain her character as an employee of the public school system, and damage her chances of securing other public employment in the future. Smitherman's alleged publication of the rumors was thus actionable *per se. Badame v. Lampke*, 242 N.C. 755, 89 S.E. 2d 466 (1955).

Defendants respond however that the principal's communication with plaintiff's fellow employees, if slanderous at all, was qualifiedly privileged. This contention fails in at least two respects.

The defense of qualified or conditional privilege arises in circumstances where (1) a communication is made in *good faith*, (2) the subject and scope of the communication is one in which the party uttering it has a valid interest to uphold, or in reference to which he has a legal right or duty, and (3) *the communication is made to a person or persons having a corresponding interest, right, or duty. Stewart v. Check Corp.*, 279 N.C. 278, 182 S.E. 2d 410 (1971); *see also Arnold v. Sharpe*, 296 N.C. 533, 251 S.E. 2d 452 (1979); *Hartsfield v. Hines*, 200 N.C. 356, 157 S.E. 16 (1931). If we assume arguendo that it may be inferred from the face of plaintiff's complaint that Smitherman had a duty as principal of the elementary school to inquire into and communicate about plaintiff's rumored misconduct, the complaint yet fails to reveal any facts which disclose a corresponding duty on the part of plaintiff's fellow employees, the alleged recipients of the defamatory communication. The complaint itself thus falls short of describing an occasion of qualified privilege. *See Stewart v. Check Corp., supra.* If the privilege applies at all in this case, the facts upon which it may be predicated must be specifically pleaded by way of affirmative defense in defendant's answer. *Stewart v. Check Corp., supra; R. H. Bouligny, Inc. v. United Steelworkers of America*, 270 N.C. 160, 154 S.E. 2d 344 (1967).

More importantly, the complaint in the instant case specifically alleges that the actions of the principal were taken maliciously and in bad faith. Such an allegation at the pleading stage serves to negate the good faith element of qualified privilege. A communication made under circumstances which otherwise support a finding of conditional or qualified privilege is nevertheless actionable upon a showing of express or actual malice. *Ramsey v. Cheek*, 109 N.C. 270, 13 S.E. 775 (1891). Plaintiff's complaint therefore states a claim against Smitherman for slander.

[2] The complaint does not suffice, however, to impute liability for defamation to defendants other than Smitherman. The allegations of defamation relate solely to the conduct of Smitherman. No affirmative action or personal involvement in the alleged defamatory publication is charged to any of the other named defendants. Neither Superintendent Graham, the individual members of the county school board, nor the district school committee may be held individually accountable for actions taken by Smitherman alone. Nor is the complaint effective to join the cor-

porate school board, the immediate employer of Smitherman, as a party defendant on the defamation claim. Unless and until a school administrative unit has waived its immunity by procuring an applicable policy of liability insurance, it may not be held responsible under *respondeat superior* for the intentional torts of its employees. G.S. 115-53; *Clary v. Board of Education*, 285 N.C. 188, 203 S.E. 2d 820 (1974). There being no allegations in the complaint of such a waiver via insurance procurement, the complaint fails to state a claim for defamation against the school board. *Fields v. Board of Education*, 251 N.C. 699, 111 S.E. 2d 910 (1960).

Plaintiff's complaint also encompasses claims for actual and punitive damages for wrongful discharge. This aspect of the complaint was dismissed in superior court pursuant to G.S. 1A-1, Rule 12(b)(1), for lack of jurisdiction over the subject matter. Judge Kivett noted in his order of dismissal that plaintiff had failed to comply with the appellate procedures of G.S. 115-34. That statute provides for a two step appeal process by which a party may first appeal "from the decision of all school personnel to the appropriate county or city board of education" and then from the resulting decision of the appropriate board "to the superior court . . . in any action . . . *affecting one's character* or right to teach." (Emphasis supplied.) Defendants contend this statute deprives the superior court of original jurisdiction over plaintiff's challenge to what is essentially an administrative decision by school personnel. Therefore the claim for wrongful discharge was properly dismissed under Rule 12(b)(1). We agree.

[3] As a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts. *King v. Baldwin*, 276 N.C. 316, 172 S.E. 2d 12 (1970); *Church v. Board of Education*, 31 N.C. App. 641, 230 S.E. 2d 769 (1976), *cert. denied*, 292 N.C. 264, 233 S.E. 2d 391 (1977). This is especially true where a statute establishes, as here, a procedure whereby matters of regulation and control are first addressed by commissions or agencies particularly qualified for the purpose. In such a case, the legislature has expressed an intention to give the administrative entity most concerned with a particular matter the first chance to discover and rectify error. Only after the appropriate agency has developed its own record and factual background upon which its decision must rest should the

courts be available to review the sufficiency of its process. An earlier intercession may be both wasteful and unwarranted. "To permit the interruption and cessation of proceedings before a commission by untimely and premature intervention by the courts would completely destroy the efficiency, effectiveness, and purpose of the administrative agencies." *Elmore v. Lanier*, 270 N.C. 674, 678, 155 S.E. 2d 114, 116 (1967); *see also McKart v. United States*, 395 U.S. 185, 193-95 (1969).

[4]  The avoidance of untimely intervention in the administrative process is a long recognized policy of judicial restraint. This policy acquires the status of a jurisdictional prerequisite when the legislature has explicitly provided the means by which a party may seek effective judicial review of particular administrative action. Thus, "[w]hen a statute under which an administrative board has acted provides an orderly procedure for an appeal to the superior court for review of the board's action, this procedure is the exclusive means for obtaining such judicial review." *Snow v. Board of Architecture*, 273 N.C. 559, 570-71, 160 S.E. 2d 719, 727 (1968); *compare*, however, *Lloyd v. Babb*, 296 N.C. 416, 251 S.E. 2d 843 (1979) (original jurisdiction of superior court upheld in absence of effective administrative remedy). We read G.S. 115-34 to require that a party entitled to its provisions must first challenge action taken by school personnel by way of an appeal to the appropriate county or city board of education. After a decision by the board "affecting one's character or right to teach," a party may *then* invoke the appellate jurisdiction of the superior court.

The action of school personnel as alleged in this case affected plaintiff's character as we have already shown. Plaintiff therefore was entitled to invoke not only the hearing but also the appellate procedures provided by G.S. 115-34. Furthermore in this instance, as will be shown, G.S. 115-34 provides an effective administrative remedy followed by effective judicial review.

[5]  Since plaintiff's complaint affirmatively discloses that no appeal from the decision of the district school committee to terminate her employment was taken to the Surry County Board of Education, Judge Kivett was correct in concluding that he had no jurisdiction to entertain the claim for wrongful discharge.[2]

2. As an "appeal . . . from the decision of . . . school personnel," the claim for wrongful discharge is not cognizable in the superior court prior to its adjudication by the County Board of Education. Should the County

The Court of Appeals nevertheless decided that G.S. 115-34 failed to afford plaintiff an "effective" administrative remedy in that the statute gave authority only for a hearing *after* plaintiff had been discharged, whereas plaintiff had a constitutional due process right to a hearing *prior* to discharge. Since the procedures mandated by G.S. 115-34 were therefore not constitutionally "effective" in this case, concluded the Court of Appeals, the plaintiff need not have followed the statutory avenues for relief. This analysis is incorrect.

The proscription of the Fourteenth Amendment that no state shall "deprive any person of life, liberty, or property, without due process of law" applies in the instant case only to the degree that plaintiff's complaint reveals a colorable claim that a "property" or "liberty" interest was violated by the procedures attendant to plaintiff's discharge. The due process sufficiency of the procedures employed must be evaluated in light of the parties, the subject matter, and the circumstances involved. *Grimes v. Nottoway County School*, 462 F. 2d 650, 653 (4th Cir. 1972), *cert. denied*, 409 U.S. 1008.

[6] Plaintiff's complaint alleges that plaintiff was employed for eighteen years "by contract in accordance with the customs and usages of the public schools of the State of North Carolina, to continue from year to year." These allegations are insufficient to show a Fourteenth Amendment "property" right or vested interest in plaintiff's continued employment. Such an interest can arise from or be created by statute, ordinance, or express or implied contract, the scope of which must be determined with reference to state law. *Bishop v. Wood*, 426 U.S. 341 (1976); *Board of Regents v. Roth*, 408 U.S. 564 (1972). Nothing else appearing, an employment contract in North Carolina is terminable at the

---

Board refuse to entertain the appeal, however, the superior court would have jurisdiction to issue a writ of mandamus compelling the Board to pass upon plaintiff's claim. Although the complaint *sub judice* does pray for an "injunction" to require defendants to provide plaintiff a "proper hearing" pursuant to G.S. 115-34, it fails to allege that defendants have refused such a hearing or even that plaintiff has ever requested one. Since the extraordinary remedy of mandamus will not be granted absent allegation and proof that defendants have refused to perform a personal duty which plaintiff has a clear legal right to have them perform, the complaint fails to state a claim for the relief of the writ. *See Sutton v. Figgatt*, 280 N.C. 89, 185 S.E. 2d 97 (1971).

We note further that the brief submitted to us by defendant appellants pursuant to App. Rule 14(d) asserts for the first time that plaintiff was in fact given a hearing before the Surry County Board of Education on 22 March 1977. The written findings of the Board resulting from this hearing purportedly upheld plaintiff's dismissal. The record of that hearing is not before us for review nor was it before the Court of Appeals. Our decision today is limited to the determination of whether there was error in the decision of the Court of Appeals. App. Rule 16. If plaintiff wishes to challenge the result of her post-termination hearing, her proper course is to appeal to the superior court for judicial review of the school board's decision. G.S. 115-34.

will of either party. *Still v. Lance*, 279 N.C. 254, 182 S.E. 2d 403 (1971). The fact that plaintiff was employed by a political subdivision of the state does not itself entitle her to tenure, nor does the mere longevity of her prior service. *Nantz v. Employment Security Commission*, 290 N.C. 473, 226 S.E. 2d 340 (1976). We conclude that the mere dismissal of plaintiff without a pre-termination hearing did not abridge a proprietary interest of constitutional magnitude.

[7]  Plaintiff's complaint does however sketch a colorable claim that a constitutionally protected "liberty" interest may be at stake. One of the liberty interests encompassed in the Due Process Clause of the Fourteenth Amendment is the right "to engage in any of the common occupations of life," unfettered by unreasonable restrictions imposed by actions of the state or its agencies. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Truax v. Raich*, 239 U.S. 33 (1915). The right of a citizen to live and work where he will is offended when a state agency unfairly imposes some stigma or disability that will itself foreclose the freedom to take advantage of employment opportunities. *Board of Regents v. Roth, supra*. Thus, where a state agency publicly and falsely accuses a discharged employee of dishonesty, immorality, or job related misconduct, considerations of due process demand that the employee be afforded a hearing in order to have an opportunity to refute the accusation and remove the stigma upon his reputation. *Codd v. Velger*, 429 U.S. 624 (1977); *Cox v. Northern Virginia Transportation Comm'n*, 551 F. 2d 555 (4th Cir. 1976).

By alleging acts of defamation concurrent with and related to the termination of her employment, plaintiff's complaint does no more than state a claim of right to an *opportunity* to be heard in a meaningful time, place, and manner. The liberty interest here implicated—the freedom to seek further employment—was offended not by her dismissal alone, but rather by her dismissal based upon alleged unsupported charges which, left unrefuted, might wrongfully injure her future placement possibilities. Due process is satisfied under these circumstances by providing plaintiff an opportunity to clear her name in a hearing of record *either* before her discharge *or* within a reasonable time thereafter. Since the purpose of such a hearing is to provide plaintiff a chance to remove the blemish on her reputation, *see Board of Regents v. Roth, supra*, 408 U.S. at 573, n. 12, it is clear that "a hearing af-

forded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause." *Arnett v. Kennedy*, 416 U.S. 134, 157 (1974).

Measured in this light, the hearing and appeal procedures contemplated by G.S. 115-34 provided plaintiff a constitutionally "effective" set of administrative and judicial remedies. Her failure to invoke these remedies appearing on the face of the complaint left her claim for wrongful discharge vulnerable to dismissal under Rule 12(b)(1). The trial court did not err in granting defendants' motion to dismiss on this ground.

For the reasons stated, the Court of Appeals' decision that plaintiff's claim for wrongful discharge should not have been dismissed is reversed. The Court of Appeals' holding that the complaint states a claim for defamation is affirmed only with respect to the claim against defendant Smitherman. The case is remanded to the Court of Appeals for remand to the superior court for further proceedings against defendant Smitherman only.

Reversed in part.

Affirmed in part and remanded.