SANDRA B. WILKINS, PLAINTIFF v. GUILFORD COUNTY, GUILFORD COUNTY DEPARTMENT OF SOCIAL SERVICES, AND JOHN W. SHORE, DIRECTOR OF THE GUILFORD COUNTY DEPARTMENT OF SOCIAL SERVICES, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, DEFENDANTS

No. COA02-1042

(Filed 1 July 2003)

**1. Disabilities— Americans with Disabilities Act—Rehabilitation Act—negative side effects from increased dosage of medication—employment termination**

The trial court did not err in an alleged unlawful employment termination case by granting summary judgment in favor of defendants even though plaintiff social worker contends there was a genuine issue of material fact concerning whether she suffered from a disability under the Americans with Disabilities Act (ADA) and the Rehabilitation Act based on alleged negative side effects from her increased dosage of attention deficit disorder

(ADD) medication, because: (1) there was no evidence that defendant was unable due to side effects from Adderall to perform a major life activity, i.e. work, that an average person could perform; (2) plaintiff made no requests for ADA accommodations based on ADD until the date she was recommended for termination; and (3) plaintiff had been taking the increased dosage of medication per day for at least a month prior to her first performance evaluation at the Department of Social Services on which she received the second-highest rating, indicating the use of drugs had no impact on her job performance and that other nondrug-related factors contributed to the decline in her work performance.

**2. Civil Rights— section 1983 claim—property interest in employment**

The trial court did not err in an alleged unlawful employment termination case by granting summary judgment in favor of defendants on plaintiff's section 1983 claim based on the Department of Social Services' (DSS) alleged failure to comply with the warning requirements set forth in Regulation 28 of the Guilford County Personnel Regulations dealing with disciplinary action including the dismissal of personnel, because there was no evidence that Regulation 28 was adopted with the same formality and characteristics of an ordinance, and plaintiff thus did not acquire a property interest in her employment with DSS.

Appeal by plaintiff from judgment filed 27 December 2001 by Judge William Z. Wood, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 19 May 2003.

*Jerry R. Everhardt for plaintiff appellant.*

*County Attorney Jonathan V. Maxwell and Assistant County Attorney Kevin W. Whiteheart, for defendant appellees.*

BRYANT, Judge.

Sandra B. Wilkins (plaintiff) appeals a judgment filed 27 December 2001 granting summary judgment in favor of Guilford County, Guilford County Department of Social Services (DSS), and DSS director John W. Shore (Shore) (collectively defendants).

In her complaint filed 18 December 2000, plaintiff, a former DSS employee, alleged that the performance deficiencies cited by DSS as

**WILKINS v. GUILFORD CTY.**

[158 N.C. App. 661 (2003)]

grounds for her 14 January 2000 dismissal were caused by side effects from an increased dosage of the drug Adderall prescribed to her for attention deficit disorder (ADD). Consequently, plaintiff claimed DSS' actions were in violation of 42 U.S.C. § 12101, *et seq.* of the Americans with Disabilities Act (ADA), 29 U.S.C. § 794 of the Rehabilitation Act of 1973, N.C. Gen. Stat. § 168A-5 (North Carolina's Persons with Disabilities Protection Act), 42 U.S.C. § 1983 for due process violations under the United States and North Carolina constitutions, and the public policy of this State. Defendants filed an answer dated 16 February 2001 denying liability, accompanied by a motion to dismiss under, *inter alia,* Rule 12(b)(6) for failure to state a claim upon which relief could be granted. Following discovery, defendants again moved to dismiss the case and, in the alternative, moved the trial court for summary judgment in their favor.

## Medical History

The pleadings, depositions, and affidavits filed in this action reveal that plaintiff consulted her physician, Dr. Mary John Baxley, in December 1997 claiming she was suffering from ADD. Dr. Baxley accepted plaintiff's "self-report [of ADD] as [her] diagnosis [of plaintiff]" because plaintiff "knew quite a bit about attention deficit disorder, and it seemed to be reasonable." Dr. Baxley initially prescribed plaintiff an anti-depressant but placed her on Ritalin in May 1998. In May 1999, Dr. Baxley referred plaintiff to psychiatrist Dr. Brian Andrew Farah with "an existing diagnosis" of ADD and a history of depression. At this time, plaintiff was not using Ritalin. Plaintiff told Dr. Farah "she had responded to Ritalin in the past and wanted to go back on stimulants." Dr. Farrah recommended that plaintiff start using Adderall instead of Ritalin because, in his opinion, "there[] [is] a rebound effect . . . often see[n] when Ritalin runs out" that is not as severe with Adderall. The initial dosage prescribed to plaintiff was for ten milligrams a day, but Dr. Farah instructed plaintiff to monitor the effect of the Adderall according to the ADD symptoms she was experiencing and allowed her to increase her dosage up to 40 milligrams a day if needed. During a follow-up visit on 14 June 1999, plaintiff told Dr. Farah she was using the maximum dosage prescribed by him. She reported that the "target symptoms" of "[c]oncentration, focus, ability to stay on task, inattentiveness, [and] distractibility [sic]" had improved and that she was not experiencing any negative side effects. Plaintiff also indicated she was experiencing fewer mood swings. Based on this information, Dr. Farah continued plaintiff's prescription for Adderall at 40 milligrams per day.

Plaintiff saw Dr. Farah again in October 1999, at which time plaintiff reported several stress factors affecting her such as a loan agreement entered into by her husband and her mother's suffering from Alzheimer's disease. Dr. Farah noted the increased stress level, but because the Adderall appeared to be effective and plaintiff neither indicated nor exhibited any side effects, Dr. Farah continued plaintiff on the same dosage. It was only after plaintiff's employment was terminated that she complained to Dr. Farah that the Adderall was affecting her mood and consequently must have impacted her work performance. Following the filing of plaintiff's complaint, plaintiff's expert, Dr. C. Keith Connors, evaluated plaintiff and concluded that she probably suffered from attention deficit hyperactivity disorder (ADHD).

## Work History

Plaintiff had been employed by the County since 1983. On 1 May 1999, plaintiff transferred to and began working as a social worker in the DSS adult services unit. On 19 July 1999, plaintiff received an initial performance evaluation with a score of four out of five points, five being the highest rating. Five months later, however, plaintiff's performance score had slipped to a two, meaning her "work [was] below job expectations in several areas." Following this evaluation, plaintiff's supervisor, on 17 December 1999, recommended plaintiff's dismissal from DSS based on insubordinate behavior, unwillingness or inability to get along with people, and a lack of compassion and sensitivity toward clients. When plaintiff was notified of this recommendation, she, for the first time, "thought [that] maybe the medicine [(Adderall)] was[] [not] working like [it should]" and requested accommodations for her ADD. Plaintiff also requested and was granted a conference hearing with Shore to contest the recommendation. In a letter dated 3 January 2000, plaintiff informed Shore that her ADD medication could cause "loss of appetite, nervousness, [and] difficulty sleeping." In support of her claim, plaintiff, at the conference hearing, presented a list of possible side effects from Adderall as given to her by her pharmacy but did not argue that the medication caused the deficiencies cited in the recommendation for dismissal. Shore subsequently terminated plaintiff's employment with DSS effective 14 January 2000.

At the hearing on defendants' motions to dismiss and for summary judgment, plaintiff conceded she had no claim against defendants under N.C. Gen. Stat. § 168A-5, which relates to employment dis-

crimination, and no claim against Shore in his individual capacity under the ADA and the Rehabilitation Act but maintained she was entitled to relief under the remaining causes of action raised in her complaint. Finding that there were no genuine issues of fact and that defendants were entitled to judgment as a matter of law, the trial court granted the summary judgment motion on 27 December 2001.

---

The dispositive issues are whether: (I) plaintiff suffered from a disability and (II) plaintiff had a property interest in her employment.

## I

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2001). The burden is on the summary judgment movant to establish the lack of any triable factual issue. *Trexler v. Norfolk S. Ry. Co.*, 145 N.C. App. 466, 469, 550 S.E.2d 540, 542 (2001).

The movant may meet its burden by: (1) demonstrating that an essential element of the plaintiff's claim is nonexistent; (2) establishing through discovery that the plaintiff[] cannot produce evidence to support an essential element of the claim; or (3) showing that plaintiff cannot survive an affirmative defense, such as governmental immunity.

*Id.*

[1] Plaintiff first argues the trial court erred in granting defendants' motion for summary judgment because there were genuine issues of material fact as to whether she suffered from a disability under the ADA and the Rehabilitation Act.

The ADA prohibits discrimination against qualified individuals with a disability, 42 U.S.C. § 12112(a) (2003), disability being defined as either (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment," 42 U.S.C. § 12102(2) (2003). For purposes of proving a disability, "the Rehabilitation Act of 1973 . . . is interpreted substantially identically to the ADA," *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 31 n.4 (1st Cir. 1996); *see EEOC v. Amego*, 110 F.3d 135, 144 (1st Cir. 1997); thus the same case law applies.

WILKINS v. GUILFORD CTY.

[158 N.C. App. 661 (2003)]

In this case, plaintiff only argues disability as defined by "a physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2)(A) (2003). She claims that her mental impairment of ADD/ADHD coupled with the negative side effects from the increased dosage of Adderall substantially limited the major life activity of working, resulting in her wrongful termination from DSS. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471, 480, 144 L. Ed. 2d 450, 461 (1999) (working is a major life activity); *but see* 29 C.F.R. § 1630.2(j)(3)(i) (2003) ("The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person . . . . The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). Assuming plaintiff suffers from a mental impairment, *see Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 155 n.18 (1st Cir. 1998) (questioning whether ADHD qualifies as a mental impairment under the ADA), we must first consider whether a person qualifies as disabled if the underlying impairment is controlled by medication but the medication, because of negative side effects, creates substantial limitations under the Act.

In *Sutton*, the United States Supreme Court held, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton*, 527 U.S. at 482-83, 144 L. Ed. 2d at 462. The Supreme Court, however, also stated "that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." *Id.* at 482, 144 L. Ed. 2d at 462. Accordingly, the negative effects of treatment measures for an impairment, including the side effects of medication, must be considered in determining whether a disability exists. *See Nawrot v. CPC Int'l*, 277 F.3d 896, 904 (7th Cir. 2002) ("courts may consider only the limitations of an individual that persist after taking into account mitigation measures (e.g., medication) and the negative side effects of the measures used to mitigate the impairment"); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 309 (3d Cir. 1999) (considering the severe side effects of the plaintiff's medication for her bipolar and manic depressive disorders for purposes of finding disability); *Treiber v. Lindbergh Sch. Dist.*, 199 F. Supp. 2d 949, 960 (E.D.Mo. 2002) (although chemotherapy for the plaintiff's breast cancer affected

her ability to have children, plaintiff did not assert any interest in having children and, therefore, that side-effect of her treatment did not render her disabled under the ADA).

Our analysis thus turns to whether plaintiff's ability to work was substantially limited by side effects from her ADD medication Adderall.

(1) The term substantially limits means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner[,] or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (2003). In this case, there is no evidence plaintiff was unable, due to side effects from Adderall, to perform a major life activity, i.e. work, that an average person could perform. From the time plaintiff started taking Adderall until after she lost her position with DSS, she never reported any side effects to her doctor, and her doctor did not observe any side effects during any of plaintiff's office visits, including after plaintiff's termination. Plaintiff also made no requests for ADA accommodations based on ADD until 17 December 1999, the date she was recommended for termination. Moreover, plaintiff had been taking the increased dosage of 40 milligrams of Adderall per day for at least a month prior to her first performance evaluation at DSS on 19 July 1999 on which she received the second-highest rating. This tends to indicate that the use of the drug had no impact on plaintiff's job performance and that other, non-drug-related factors contributed to the decline in her work performance leading to her poor evaluation in December 1999 and subsequent termination from DSS. As we see nothing in this record to substantiate plaintiff's disability claim, the trial court did not err in granting defendants' summary judgment motion with respect to this claim. *See Trexler*, 145 N.C. App. at 469, 550 S.E.2d at 542 (summary judgment proper if an essential element of the plaintiff's claim is nonexistent).

II

[2] We next consider whether summary judgment was proper as to plaintiff's section 1983 claim.

Section 1983 provides in pertinent part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2003).

In the case *sub judice*, plaintiff argues her property rights under the due process clauses of the United States and North Carolina constitutions were violated because DSS failed to comply with the warning requirements set forth in Regulation 28 of the Guilford County Personnel Regulations, which deals with disciplinary action, including the dismissal of Guilford County personnel. We disagree.

"The procedural safeguards encompassed by the due process clause extend to [an employee's] continued employment only if she had a property interest in that employment," *Pittman v. Wilson County*, 839 F.2d 225, 226 (4th Cir. 1988), and absent a contractual agreement specifying a definite period of employment, only "[a] statute or ordinance may create a property interest in continued employment," *Kearney v. County of Durham*, 99 N.C. App. 349, 351, 393 S.E.2d 129, 130 (1990); *see Pittman*, 839 F.2d at 227 ("absent a contractual guarantee, an exception to the 'employee-at-will' rule specifically is recognized under North Carolina law when a statute or ordinance provides for restrictions on the discharge of an employee"); *Presnell v. Pell*, 298 N.C. 715, 723, 260 S.E.2d 611, 616 (1979). In *Kearney*, this Court further held that "[i]n the absence of evidence that [a] resolution was adopted with the same formality and characteristics of an ordinance, it is insufficient to create a property interest analogous to that of a statute or ordinance." *Kearney*, 99 N.C. App. at 352, 393 S.E.2d at 130; *see Pittman*, 839 F.2d at 227-29.

"Generally, measures that prescribe binding rules of conduct are ordinances while measures that relate to administrative or housekeeping matters are categorized as resolutions." *Kearney*, 99 N.C. App. at 351-52, 393 S.E.2d at 130 (citation omitted) (internal quotations omitted). "Like a statute, an ordinance is a law binding on all concerned. Therefore, certain important procedures generally are

**IN RE N. WILKESBORO SPEEDWAY, INC.**

[158 N.C. App. 669 (2003)]

prescribed for its adoption. These normally require a prescribed record vote, a public hearing, and published notice." *Pittman*, 839 F.2d at 228 n.7.

In this case, the minutes of the Board of Commissioners indicate that the Board specifically adopted the Guilford County Personnel Regulations, including Regulation 28, "by *resolution* and not by ordinance" for the purpose of providing "a lawful, orderly and fair system of personnel *administration* for Guilford County" (emphasis added). The Board thus expressly conveyed its intention to adopt a resolution on administrative matters regarding the County personnel. *See Kearney*, 99 N.C. App. at 351-52, 393 S.E.2d at 130. While the minutes further state that the regulations "may be supplemented or amended by the Board from time to time as necessary," there is no provision requiring formalities such as "a prescribed record vote, a public hearing, and published notice." *Pittman*, 839 F.2d at 228 n.7. As there is thus no evidence that Regulation 28 was "adopted with the same formality and characteristics of an ordinance," *Kearney*, 99 N.C. App. at 352, 393 S.E.2d at 130, plaintiff did not acquire a property interest in her employment with DSS and the trial court properly granted summary judgment to defendants on plaintiff's section 1983 claim based on due process violations.

Affirmed.

Chief Judge EAGLES and Judge LEVINSON concur.