Olds v. Olds, 2026 NCBC 58.

STATE OF NORTH CAROLINA

POLK COUNTY

IN RE: CUSTODIAL ACCOUNT OF
JOHN ROBERT OLDS CUST FOR
DAVIS AUSTIN OLDS UGAUTMA

DAVIS AUSTIN OLDS,

           Plaintiff,

v.

JOHN ROBERT OLDS II,
individually, and as Custodian of the
JOHN ROBERT OLDS CUST FOR
DAVIS AUSTIN OLDS UGAUTMA
UNTIL AGE 21, and as Managing
Member of Cressbrook Investments
LLC; and CRESSBROOK
INVESTMENTS LLC,

           Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV000166-740

ORDER AND OPINION ON
DEFENDANTS' PARTIAL MOTION TO
DISMISS AND PLAINTIFF'S MOTION
TO DISMISS DEFENDANT OLDS'
COUNTERCLAIM

1.    **THIS MATTER** is before the Court upon Defendants' Partial Motion to Dismiss and Plaintiff's Motion to Dismiss Defendant Olds' Counterclaim (collectively, the "Motions"). Defendants' Partial Motion to Dismiss (Defendants' Motion) was filed pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)") on 18 August 2025 in the above-captioned case.[1] Plaintiff's Motion to

---

[1] (Defs.' Partial Mot. Dismiss [hereinafter, Defs.' Mot.], ECF No. 17.)

Dismiss Defendant Olds' Counterclaim (Plaintiff's Motion) was also filed pursuant to Rule 12(b)(6) of the Rules on 17 September 2025 in the above-captioned case.[2]

2. Having considered the Motions, the parties' briefs in support of and in opposition to the Motions, the Complaint ("Complaint")[3], and other appropriate matters of record, the Court hereby **GRANTS in part** and **DENIES in part** Defendants' Motion and **GRANTS in part** and **DENIES in part** Plaintiff's Motion.

*Shumaker, Loop, & Kendrick, LLP, by Lucas D. Garber, Clifton Andrew Dandison, and Lynn F. Chandler, for Defendants John Olds and Cressbrook Investments, LLC.*

*John Stephens Law, by John M. Stephens, for Plaintiff Olds.*

Shirley, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3. The Court does not make findings of fact when ruling on motions to dismiss under Rule 12(b)(6). The following factual summary is drawn from relevant allegations in the Complaint and Counterclaims.[4]

4. Plaintiff Davis Olds ("Plaintiff") is an adult resident of Spartanburg County, South Carolina, and attained 21 years of age on 8 February 2025.[5]

---

[2] (Pl.'s Mot. Dismiss Def. Olds' Countercl. [hereinafter Pl.'s Mot.], ECF No. 24.)

[3] (Compl., ECF No. 3.)

[4] (Compl.; Answer, Affirmative Defenses, Countercl. [hereinafter "Countercl."], ECF No. 19.)

[5] (Compl. ¶ 1.)

5. Defendant John Robert Olds II ("Defendant Olds") is an adult resident of Polk County, North Carolina.[6]

6. Defendant Cressbrook Investments LLC ("Cressbrook") is a North Carolina Limited Liability Company with its principal office in Polk County, North Carolina (Cressbrook and Defendant Olds are collectively "Defendants"). [7]

7. Defendant Olds purports to be the Managing Member of Cressbrook Investments LLC.[8]

8. Plaintiff was the beneficiary of the JOHN ROBERT OLDS CUST FOR DAVIS AUSTIN OLDS UGAUTMA UNTIL AGE 21 account (the "UTMA Account").[9]

9. Defendant Olds is Plaintiff's father and was the custodian of the UTMA account.[10]

10. Plaintiff alleges that "[p]ursuant to N.C. Gen. Stat. § 33A-20 Defendant Olds has a fiduciary duty to 'transfer in an appropriate manner the custodial property to Plaintiff upon his attainment of 21 years of age.'"

11. Plaintiff attained 21 years of age on 8 February 2025.[11]

---

[6] (Compl. ¶ 2.)

[7] (Compl. ¶ 4.)

[8] (Compl. ¶ 5.)

[9] (Compl. ¶ 8.)

[10] (Compl. ¶¶ 9-10.)

[11] (Compl. ¶ 12.)

12. On or about 3 October 2024, roughly four months before Plaintiff's 21st birthday, Defendant Olds transferred $1,057,000.00 from the UTMA account.[12]

13. On or about 16 January 2025, Defendant Olds transferred $15,400 from the UTMA account.[13] After that transfer, less than $100.00 remained in the UTMA account (the $1,072,400.00 transferred from the UTMA Account on 3 October 2024 and 16 January 2025 are hereinafter referred to as the "Funds").[14]

14. On or about 3 December 2024, Defendant Olds told Plaintiff that Defendant Olds had "made a change to the structure of [his] educational funds by moving most of that money [from the UTMA account] into a trust-like mechanism."[15]

15. Defendant Olds further told Plaintiff that he had transferred the money from the UTMA account in order to keep the Funds beyond Plaintiff's control because he believed Plaintiff was "not yet mature enough, experienced enough, or responsible enough to handle" the Funds.[16]

---

[12] (Compl. ¶ 13.)

[13] (Compl. ¶ 14.)

[14] (Compl. ¶ 15.)

[15] (Compl. ¶ 16.)

[16] (Compl. ¶ 17.)

16. Plaintiff made multiple demands of Defendant Olds to transfer to him the Funds from the UTMA account.[17] Defendant Olds has failed to comply with Plaintiff's demands to transfer the Funds to him.[18]

17. Defendant Olds claims to have "invested" the Funds in Cressbrook. Defendant Olds is the managing member of Cressbrook and claims to be an owner of a 51% interest in the company.[19] Defendant Olds further claims that Plaintiff is the owner of a 49% interest in the company; such ownership interest having been acquired pursuant to the transfer of the Funds from the UTMA account.[20] The value of the Funds from the UTMA account that went towards such purported acquisition remains unknown.[21]

18. On 25 March 2025, Plaintiff, through counsel, requested that Defendant Olds produce the company's operating agreement and financial records.[22]

19. Defendant Olds replied to the request, through counsel, that he would not produce the operating agreement or financial records unless Plaintiff signed a "confidentiality agreement," which agreement sought to prohibit Plaintiff from using

---

[17] (Compl. ¶ 18.)

[18] (Compl. ¶ 19.)

[19] (Compl. ¶¶ 20-22.)

[20] (Compl. ¶ 23.)

[21] (Compl. ¶ 23.)

[22] (Compl. ¶ 24.)

the information "in any manner to the detriment" of Defendant Olds or for any other purpose other than the sole and specific purpose of determining the value of Plaintiff's ownership interest.[23]

20.    On 20 May 2025, Plaintiff again, now through counsel, demanded Defendant Olds transfer all Funds to Plaintiff due to him from the UTMA account. Defendant Olds, through counsel, responded to such demand that he would not "allow [Plaintiff] to withdraw from" Cressbrook. [24]

21.    Defendant Olds alleges that Plaintiff made several written and oral statements regarding Defendant Olds that are false and that, if true, would lead him to be condemned by reasonable members of the general community and injure his professional reputation as a defense contractor holding a security clearance.[25]

22.    Specifically, on 2 March 2025, Plaintiff sent an email to Defendant Olds' in-laws, which contains falsities and false implications.[26] The email states, in pertinent part:

> I was punished by Mom and Dad through horrible words, violence, and intimidation. They were very unlike themselves. Dad even told me that he thinks the Bible is "full of contradictions" and made fun of me and my girlfriend for saying it is the perfect Word of God. Mom defended Dad denying the Bible. I know they have spread lies through the family and that breaks my heart. They have often encouraged me to lie to you in the past . . . . As you all know, Dad created an LLC with money that he

---

[23] (Compl. ¶ 25.); (Ex. A – Confidentiality Agreement ¶ 2, ECF No. 19.1.)

[24] (Compl. ¶¶ 26-27.)

[25] (Countercl. ¶ 5.)

[26] (Countercl. ¶ 6.)

fraudulently withdrew from my Schwab account to punish me. He also sold my car without telling me and refused to help me purchase a replacement. He will not provide for my books, food, insurance, phone, or anything else. He has put me in a position where I have no choice but to take legal action. I am also in talks with the police as they are concerned that Dad committed fraud and he could face prison time for the abuse he has perpetrated against me. I don't want this to happen, but he has made things so difficult that I have no choice.[27]

23. Additionally, on 3 March 2025, Defendant Olds alleges that Plaintiff sent an email to Defendant Olds' parents, which contains falsities and false implications.[28] The email states, in pertinent part:

> . . . I was punished by Mom and Dad through horrible words, violence, and intimidation. They were both unstable, threatening to steal my money . . . . As you all know, Dad created an LLC with money that he fraudulently withdrew from my Schwab account to punish me. He also sold my car without telling me and refused to help me purchase a replacement. He will not provide for my books, food, insurance, phone, or anything else. I am also in talks with the police as they are concerned that Dad committed fraud and he could face prison time for the abuse he has perpetrated against me.[29]

24. Plaintiff reported to the financial aid office at Wofford College that Defendant Olds had run out of money and taken money from Plaintiff to apply to Defendant Olds' own financial needs, leaving Plaintiff with no way to pay for college.[30]

---

[27] (Countercl. ¶ 6.); (Ex. A – Email, ECF 30.1.)

[28] (Countercl. ¶ 7.)

[29] (Countercl. ¶ 7.); (Ex. B – Email, ECF No. 30.2.)

[30] (Countercl. ¶ 8.)

25. Plaintiff has made numerous statements, both oral and in writing, to third parties in person, to financial institutions, to government agencies, including, without limitation, the Polk County Sheriff, and to Wofford College, regarding fraud allegedly committed by Defendant Olds by theft of money from Plaintiff. [31]

26. Plaintiff continues to publish false and disparaging statements regarding Defendant Olds. [32]

27. On 16 June 2025, Plaintiff filed a Complaint, asserting claims against Defendant Olds for breach of fiduciary duty, conversion, fraud, constructive fraud, common law fraud, fraudulent misrepresentation, fraud in the inducement, fraudulent conveyance, unfair and deceptive trade practices, piercing the corporate veil, special/punitive damages, and a statement of sum certain. [33] On 18 August 2025, Defendants filed an Answer, Affirmative Defenses, and Counterclaim in which Defendant Olds asserted a counterclaim for defamation against Plaintiff. [34]

28. Defendants filed a Partial Motion to Dismiss on 18 August 2025 and Plaintiff filed a Motion to Dismiss Defendant Olds' Counterclaim on 17 September 2025. [35] Through Defendants' Motion, Defendants seek dismissal with prejudice of

---

[31] (Countercl. ¶ 9.)

[32] (Countercl. ¶ 10.)

[33] (Compl.)

[34] (Countercl.)

[35] (Defs.' Mot.)

Plaintiff's claims for conversion, fraud, common law fraud, fraudulent representation, fraud in the inducement, constructive fraud, fraudulent conveyance, unfair and deceptive trade practices, piercing the corporate veil, punitive damages, and a statement of sum certain.[36] Through Plaintiff's Motion, Plaintiff seeks dismissal of Defendant Olds' defamation counterclaim.[37] After full briefing, the Honorable A. Todd Brown held a hearing on both Motions on 8 January 2026, at which all parties were represented by counsel. Upon Judge Brown's retirement, this case was assigned to the undersigned.[38] The parties indicated that they did not wish to be reheard. The Motions are now ripe for resolution.

II.

LEGAL STANDARD

29.    A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the" disputed pleading, here Plaintiff's claims and Defendant Olds' counterclaim. *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681 (1986). The motion should be granted only when: (1) the pleading "on its face reveals that no law supports" the asserted claim; (2) the pleading "on its face reveals the absence of facts sufficient to make a good claim;" or (3) the pleading "discloses some fact that

---

[36] (Defs.' Mot.)

[37] (Pl.'s Mot.)

[38] (Reassignment Order, ECF No. 41.)

necessarily defeats" the claim. *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at \*8 (N.C. Super. Ct. June 19, 2019) (internal citations omitted).

30. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the claims and counterclaims as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Id.*; *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Vanguard*, 2019 NCBC LEXIS 39, at \*8; *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56 (2001). The Court may consider documents that are the subject of the counterclaims and to which the counterclaims specifically refer without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204 (2007) (quoting *Oberlin Capital*, 147 N.C. App. at 60); *Vanguard*, 2019 NCBC LEXIS 39, at \*8.

III.

ANALYSIS

31. The Court will take up each claim in turn with respect to the Motions.

<u>Defendants' Motion to Dismiss</u>

A. <u>Conversion</u>

32. The elements of a conversion claim include "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." *RoundPoint Mortg. Co. v. Florez*, 2016 NCBC LEXIS 18, at \*127 (N.C. Super. Ct. Feb.

18, 2016).  Conversion does not exist until some act is done which denies or violates Plaintiff's dominion over his rights to his property. *See Wake Cnty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 652, 762 S.E.2d 477, 489 (2014).

33.  Defendants argue that Plaintiff fails to state a claim for conversion. However, the Court disagrees.  Specifically, Defendants contend that the Complaint fails to allege "Dr. Olds has assumed ownership over or exercised rights with respect to Plaintiff's membership interest in Cressbrook" or "facts that Dr. Olds has prevented Plaintiff from exercising his rights as a member in Cressbrook under the North Carolina Limited Liability Act…"[39] Defendant Olds asserts that he transferred the funds to Defendant Cressbrook in which he owns a majority interest and is the managing member.[40] Plaintiff alleges Defendant Olds assumed control over funds belonging to Plaintiff without Plaintiff's knowledge or consent and while deceiving Plaintiff as to the status of such funds.[41] Plaintiff also highlights the fact that he has alleged that Defendant Olds did so with the "express purposes of securing his full control over the funds and denying Plaintiff access to them and has, thus far, achieved these goals."[42]  Plaintiff further alleges that Defendant Olds refused his demands for

---

[39] (Mem. Law Supp. Defs.' Partial Mot. Dismiss [hereinafter, "Defs.' Mem."], ECF No. 18.)

[40] (Compl. ¶¶ 20-23.)

[41] (Compl. ¶¶ 13-17, 20-27.)

[42] (Pl.'s Br. Opp'n Def's Partial Mot. Dismiss [hereinafter "Pl.'s Br."] 4, ECF No. 22.); (*See* Compl. ¶¶ 16-17, 20-27, 35-40.)

return of the funds and will not "allow" Plaintiff to withdraw funds from Cressbrook.[43] Plaintiff also alleges that Defendants refused to provide him information on the ownership interest he purportedly owns unless he executed a "confidentiality agreement" that restricted the use of the information he received.[44] Accordingly, the Court **DENIES** Defendants' Motion with respect to the conversion claim.

## B. Fraud, Common Law Fraud, Fraudulent Representation, and Fraud in the Inducement

34. Plaintiff alleges Defendant Olds made fraudulent misrepresentations of material facts and concealed material facts as to Defendant Olds' management and disposition of the custodial property.[45]

35. The essential elements of fraudulent misrepresentation are well established: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Lamm v. Till*, 2015 N.C. App. LEXIS 250, * 13 (unpublished) (citing, *Forbis v. Neal*, 361 N.C. 519, 526–27 (2007) quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138 (1974)). Claims for common law fraud, fraudulent representation, and fraudulent inducement require a showing of the same elements. To sufficiently plead fraud consistent with the heightened standards of

---

[43] (Compl. ¶¶ 18-20, 26-27.)

[44] (Compl. ¶¶ 24-27.)

[45] (Compl. ¶ 42.)

Rule 9(b), a plaintiff must allege definite and specific facts supporting the claim, including time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations. *See Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 263 (2023) (emphasis added) citing *Terry v. Terry*, 302 N.C. 77, 85 (1981); *see also Ragsdale v. Kennedy*, 286 N.C. 130, 139 (1974); N.C. Gen. Stat. § 1A-1, Rule 9(b).

36.    "Because 'silence is fraudulent only when there is a duty to speak,' a claim based on 'concealment or nondisclosure' requires the plaintiff to allege that the defendant 'had a duty to disclose material information.' *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007) (citing *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198 (1976)). A duty to disclose arises when the parties are in a fiduciary relationship . . . ." *Maxwell Foods v. Smithfield Foods*, 2023 NCBC LEXIS 20 at  *5 (N.C. Super. Ct. Feb. 3, 2023).

37.  Unlike fraud based upon fraudulent misrepresentation:

> "[f]raudulent concealment or fraud by omission is, by its very nature, difficult to plead with particularity." *McKee v. James*, 2013 NCBC LEXIS 33, at *22 (N.C. Super. Ct. July 24, 2013) (quoting Lawrence v. UMLIC-Five Corp., 2007 NCBC LEXIS 20, at *9 (N.C. Super. Ct. June 18, 2007)). Fraud claims based on omission require a plaintiff to allege:
>
>> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such

disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance. *Lawrence, 2007 NCBC LEXIS 20, at \*9* (quoting *Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 195-96 (M.D.N.C. 1997)).*

*Vitaform, Inc. v. Aeroflow, Inc.* 2020 NCBC LEXIS 132, at \*46 (N.C. Super. Ct. Nov. 4, 2020).

38. Plaintiff alleges that "Defendant [Olds] owed a fiduciary duty to Plaintiff as custodian of the UTMA account." [46] There is a disagreement between the parties as to whether the custodial account is governed by the North Carolina Uniform Transfer to Minors Act (N.C. Gen. Stat. Chapter 33A) ("the UTMA") or the Georgia Transfers to Minors Act (Ga. Code. Ann. Tit. 44, Ch. 5.) ("the GTMA"). The Court, at this stage, lacks sufficient information as to whether the UTMA or GTMA applies. For purposes of this Opinion and Order, the Court will apply the provisions of the UTMA. While some differences exist between the UTMA and the GTMA, for purposes of the Court's analysis in this Opinion and Order the relevant statutory provisions are nearly identical.

39. Pursuant to N.C. Gen. Stat. § 33A-11 Defendant Olds "[had] all the rights, powers, duties, and authority provided by [N.C. Gen. Stat. Chapter 33A]" and Plaintiff had no "right, power, duty or authority with respect to the custodial property except as provided in [N.C. Gen. Stat. Chapter 33A]." In other words, the extent of

---

[46] (Compl. ¶ 28.)

Defendant Olds' fiduciary duties is defined by the legislature in N.C. Gen. Stat. Chapter 33A.

40.    While Plaintiff alleges a number of statements made by Defendant Olds in the factual assertions section of the Complaint,[47] he fails to identify which statements or assertions are false.  Instead, Count 3 of his Complaint merely states that "Defendant Olds made false representations and concealed material facts as to his management of and disposition of custodial property from the UTMA account."[48]  This leaves the Court to speculate as to which of the alleged statements were false. Plaintiff's failure to specifically identify which statements are false makes his claims based upon fraud ripe for dismissal.

41.    Plaintiff now argues Defendant Olds concealed material facts from him as a basis to support his fraud claim.[49]  Plaintiff first claims that Defendant Olds concealed the fact that he had removed over $1,000,000.00 from the UTMA account and, then two months later after taking the money, told Plaintiff he had "made a change to the structure of your educational funds by moving most of that money . . . into a trust-like mechanism" only later to claim, instead, that he 'invested' the funds in an LLC he owns and controls.[50] This argument undermines itself  in that while arguing the transfers were concealed, he admits they were disclosed.  This alone

---

[47] (*See* Compl. ¶¶ 16, 17, 20, 22, 23, 25 & 27.)

[48] (Compl. ¶ 42.)

[49] (Compl. ¶¶ 42-44.)

[50] (Compl. ¶¶ 13, 16, 20-22, 25, 27.)

subjects Plaintiff's claim for fraud to dismissal as it relates to the concealment of the transfer of the Funds.

42. In addition, even if the transfer of Funds was concealed from Plaintiff he has not identified any duty Defendant Olds owed to him which required Defendant Olds to disclose the transfer of Funds prior to their transfer. Any duty Defendant Olds owed to Plaintiff flows from his position as the custodian of the Funds. Pursuant to the duties imposed under the UTMA, Defendant Olds had a duty to (a) "keep records of all transactions with respect to custodial property . . . and shall make them available for inspection at reasonable intervals . . . by the [Plaintiff],"[51] Defendant Olds was also required to provide an accounting when required by the court[52]; Plaintiff has failed to cite and the Court has been unable to find any requirement in N.C. Gen. Stat. Chapter 33A that Defendant Olds has a duty to give the Plaintiff an opportunity to approve any investment of the Funds or be notified of the same in advance, nor has Plaintiff pointed to any such duty imposed by law. As no duty to disclose has been identified by Plaintiff, his claim for fraud by concealment based upon the statement discussed in paragraph 41, *supra,* fails.

43. Plaintiff also argues that Defendant Olds' refusal to allow him unconditional access to the operating agreement and financial records of Defendant Cressbrook constitutes a concealment of material facts regarding the management and

---

[51] (N.C. Gen. Stat. § 33A-12(e).)

[52] (N.C. Gen. Stat. § 33A-19.)

investments of Cressbrook.[53] To accept Plaintiff's argument, any improper refusal of a request to inspect company records would automatically give rise to a claim for fraud. Even if such a denial could support a claim for fraud, Plaintiff has failed to allege (1) what Defendant Olds gained by withholding this information; (2) why Plaintiff's reliance on the omission was both reasonable and detrimental; and (3) the damages proximately flowing from such reliance.

44. Accordingly, and for all of the reasons discussed herein, the Court **GRANTS** Defendants' Motion with respect to the fraud, common law fraud, fraudulent representation, and fraud in the inducement claims whether based on misrepresentation or concealment of facts.

### C. Constructive Fraud

45. A constructive fraud claim requires a plaintiff to allege and show (1) that the defendant "owes the plaintiff a fiduciary duty;" (2) that the defendant "breached" that duty; and, (3) that the defendant "sought to benefit himself in the transaction." *Ironman Med. Props., LLC v. Chodri*, 268 N.C. App. 502, 513 (2019) quoting *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620 (2012) (internal citations omitted). The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is intent and a showing that defendant benefitted from his breach of duty. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294 (2004). This element requires a plaintiff to allege and prove that the defendant took "advantage of his position of trust to the hurt of plaintiff" and

---

[53] (Pl.'s Br. 5, ECF No. 22.)

sought "his own advantage in the transaction." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666 (1997), 346 N.C. at 666 (citation omitted).

46.     Defendants contend that Plaintiff's constructive fraud claim fails for failure to allege facts evidencing the intent to benefit from the transaction and to harm Plaintiff.  The Court does not find this argument persuasive.  Plaintiff's claim for constructive fraud is solely based upon Defendant Olds' handling and transfer of the Funds and statements made with respect to the same.  First, Plaintiff alleges that he has been denied access to and dominion over the custodial property upon his attainment of 21 years of age.[54] Second, Plaintiff alleges that Defendant Olds sought to benefit himself by ensuring unilateral control over the Funds and denying Plaintiff access to and dominion over the Funds.[55]  Third, Plaintiff alleges Defendant Olds has retained the Funds and claims to have used them for his own benefit by investing them in Cressbrook.[56] Lastly, Plaintiff alleges that Defendant Olds sought successfully to benefit himself by maintaining and escalating his control over the life and choices of his adult son.[57]  The Court disagrees with Defendants that Plaintiff has failed to state a claim for constructive fraud. Accordingly, the Court **DENIES** Defendants' Motion in respect to the constructive fraud claim as it relates to the

---

[54] (Compl. ¶¶ 18-19, 24-27.)

[55] (Compl. ¶¶ 16-27.)

[56] (Compl. ¶¶ 20-27.)

[57] (Compl. ¶¶ 16-17.)

handling and transfer of the Funds. To the extent that Plaintiff's claim for Constructive Fraud is based upon any concealment of a material fact, as stated in paragraph 42, *supra*, Plaintiff has failed to identify any duty Defendant Olds owed him to disclose information, and the Court **GRANTS** Defendants' Motion with respect to any claim for constructive fraud based upon representations or concealments.

### D. Fraudulent Conveyance

47.     Plaintiff alleges Defendant Olds made transfers of custodial property by removing the Funds from the UTMA account to a company controlled by Defendant Olds shortly before the Plaintiff turned 21 at which time Plaintiff would have been entitled to receive such Funds.[58]

48.     Causes of action for fraudulent conveyance in North Carolina are governed by the Uniform Voidable Transactions Act ("UVTA") and are available exclusively in the context of debtor-creditor relationships. *See BIOMILQ, Inc. v. Guiliano*, 2024 NCBC LEXIS 58, at *142 (N.C. Super. Ct. Apr. 19, 2024); N.C. Gen. Stat. § 39-23.1 et seq.  More specifically, Plaintiff must allege his status as a creditor and Defendant Olds, as custodian of the UTMA Account, as a debtor who transferred an asset with intent to hinder, delay, or defraud Plaintiff. *See Maloney v. All. Dev. Grp., LLC*, 2006 NCBC LEXIS 14 (N.C. Super. Ct. Sept. 18, 2006).

49.     The UVTA defines "creditor" in substantially the same manner as the United States Bankruptcy Code ("Bankruptcy Code") as any person who has a "right

---

[58] (Compl. ¶¶ 12-14, 47-48.)

to payment". *See id; See also* N.C. Gen. Stat. §§ 39–23.1(3) to 39–23.1(4). Much of the UVTA and its definitions are derived from the Bankruptcy Code. *See* N.C. Gen. Stat. § 39–23*, et seq*. Interpretations of the UVTA and the Bankruptcy Code have not found that an ownership interest equates to a "right to payment" or "claim" as to satisfy the definition of "creditor" or, similarly, that a party's obligation to assign or transfer rights satisfies the definition of "debtor" so as to trigger the ability to avoid a preferential transfer or file a proof of claim. *See id. citing In re Riverside–Linden Inv. Co.*, 925 F.2d 320, 323 (9th Cir. 1991) (internal citations omitted); *see also BIOMILQ, Inc. v. Guiliano*, 2024 NCBC LEXIS 58, at *143 (concluding that an alleged obligation to assign intellectual property did not create a debtor-creditor relationship under the UVTA).

50.     For the purposes of the Court's analysis, the Court assumes, as alleged by Plaintiff, but without deciding the issue, that a creditor-debtor relationship existed between the Plaintiff and Defendant Olds within the meaning and intent of the UVTA.  The Court must therefore determine whether Defendant Olds' transfer of custodial funds governed by the UTMA to an LLC in order to keep the funds beyond Plaintiff's control could constitute a voidable transfer within the meaning of UVTA.

51.     Historically, "generally, any conveyance or transfer of a debtor that lessens the fund from which his creditors can expect to be repaid may have a tendency to hinder or delay them and is subject to being treated as fraudulent."[59] This concept

---

[59] E. Cader Howard, *The Law of Fraudulent Conveyances in North Carolina: An Analysis and Comparison With the Uniform Fraudulent Conveyances Act*, 50 N.C. L. Rev. 872, 877 (1972).

dates back as early as the sixteenth century in the Statutes of 13 Elizabeth and has been adopted by "many jurisdictions, including North Carolina with only slight alterations.[60] The UVTA is the successor to these earlier statutes which provide that "any property of a debtor that can be reached by his creditors is within the purview of both the Elizabethan statute" and North Carolina statutes based upon the same.[61]

52. Plaintiff is correct that "[a] transfer made by a debtor is voidable as to a creditor . . . if the debtor made the transfer . . . [w]ith intent to hinder, delay, or defraud any creditor of the debtor."[62]

53. A transfer under the UVTA is defined as [e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with an asset or an interest in an asset . . . ."[63] An asset is "[p]roperty of a debtor, but the term does not include . . . property to the extent it is generally exempt under non-bankruptcy law."[64]

---

[60] (*Id.* at 873-874.)

[61] (*Id.* at 877.)

[62] (N.C. Gen. Stat. § 39-23.4(a).)

[63] (N.C. Gen. Stat. § 39-23.1(12).)

[64] (N.C. Gen. Stat. § 39-23.1(2).)

54. Nowhere in the Complaint does Plaintiff allege that the Funds were property of Defendant Olds, or that they were subject to execution for his debts under non-bankruptcy law.

55. When the Funds were transferred to the UTMA account for the benefit of Plaintiff, they became custodial property subject to the provisions of the UTMA.[65] The transfer of the Funds by Defendant Olds pursuant to the UTMA was irrevocable, and the Funds were indefeasibly vested in the Plaintiff subject to Defendant Olds' "rights, powers, duties, and authority" as the custodian of the Funds.[66] Defendant Olds' rights and duties included the duty to "take control of the [Funds]" as well as to "collect, hold, manage, invest, and reinvest the [Funds]." [67] Any income or proceeds from the Funds became custodial property as well.[68] Any property obtained through investment of the income or proceeds of the Funds became custodial property and was indefeasibly vested in Plaintiff, not Defendant Olds, who only had the rights and duties with respect to the Funds that were set forth in the UTMA.

56. Upon transfer of the Funds to Cressbrook for a 49% ownership interest, that 49% ownership interest was indefeasibly vested in Plaintiff and held in the custody of Plaintiff as it became custodial property.

---

[65] Custodial property is defined under the UTMA as (i)"any interest in property transferred to a custodian under [the UTMA] and (ii) the income from and proceeds of that interest in property."(N.C. Gen. Stat. §33A-1(5)).

[66] (N.C. Gen. Stat. § 33A-11.)

[67] (N.C. Gen. Stat. § 33A-12.)

[68] (N.C. Gen. Stat. § 33A-1(5).)

57. Defendant Olds remained the custodian of the custodial property, including investments made using the custodial property, from the time he was designated as the custodian until such time as he resigned, died or was removed by a court.[69]

58. Upon Plaintiff turning 21, Defendant Olds, as custodian, was required to transfer full control of the 49% interest in Cressbrook to Plaintiff.[70] Plaintiff does not complain that a 49% interest in Cressbrook was not delivered to him but rather that the Funds that were used to obtain that interest were not returned to him. What Plaintiff complains about is the investment vehicle in which the Funds were deposited and his inability to access those funds now.

59. Under the UTMA Defendant Olds had the duty and right to invest the Funds, and a disagreement over the wisdom of the investment does not give rise to a claim under the UVTA.

60. The funds were never the property of Defendant Olds and therefore could not be considered an asset under the UVTA. This analysis conforms with the plain wording of the UVTA and is consistent with the law of fraudulent conveyances that has endured for centuries in North Carolina. Accordingly, the Court **GRANTS** Defendants' Motion with respect to the fraudulent conveyance claim.

E. Unfair and Deceptive Trade Practices

61. To support a claim of unfair and deceptive trade practices a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition,

---

[69] (N.C. Gen. Stat. § 33A-18.)

[70] (N.C. Gen. Stat. § 33A-20.)

(2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business. *See Faucette v. 6303 Carmel Rd., LLC*, 242 N.C. App. 267, 275–76 (2015) *citing Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 460–61 (1991); *see also* N.C. Gen. Stat. § 75–1.1.

62. Plaintiff alleges at paragraph 54 of the Complaint that "Defendant Olds' knowingly and intentionally deceived Plaintiff including as to the disposition of the custodial property, and as to Defendant Olds' management thereof, and as Plaintiffs rights thereto." These are the same claims the Court found deficient in paragraphs 40 and 43 *supra*, and they are likewise insufficient to support a violation of Chapter 75 of the North Carolina General Statutes.

63. In paragraph 55 of his Complaint Plaintiff alleges

> Defendant Olds created Cressbrook Investments LLC and transferred custodial property from the UTMA account to "invest" in the company knowing and with the intention of using the same as a vehicle by which to deny Plaintiff control over the custodial property beyond Plaintiff's attainment of 21 years of age/or with the intention of profiting from the use of such custodial property by Cressbrook Investments LLC, of which Defendant Olds is the majority owner.

64. However, Section 75–1.1 only regulates "a business's regular interactions with other market participants[,]" not "internal conduct of individuals within a single market participant." *Powell v. Dunn*, 2014 NCBC LEXIS 3, at *17 (N.C. Super. Ct. Jan. 28, 2014) (quoting *White v. Thompson*, 364 N.C. 47, 51, 53 (2010)). North Carolina courts have consistently held that a breach of one's fiduciary duty confined to a single entity—such as within a partnership or corporation—does not involve conduct "in or affecting commerce" and therefore falls outside the scope of the

UDTPA. *See White v. Thompson*, 196 N.C. App. 568, 573 (2009), *aff'd*, 364 N.C. 47 (2010) (rejecting a UDTPA claim against a partner alleged to have breached his duty of loyalty to the partnership and explaining that "this usurpation harmed [the partnership] and Plaintiffs, but had no impact in the broader marketplace"); *see also Alexander v. Alexander*, 250 N.C. App. 511 (2016) (holding that misappropriation of corporate funds through payments made to oneself did not support a UDTPA claim because the "unfairness of Defendant's conduct did not occur in his dealings with other market participants[,]" but only in dealings "with Plaintiff [as] his co-owner[.]" (citation omitted and cleaned up)).

65. By contrast, when fiduciary misconduct occurs within the context of buyer/seller or broader market transactions, North Carolina courts have recognized that the conduct may fall within the scope of the UDTPA. *See Sara Lee Corp. v. Carter*, 351 N.C. 27 (1999) (holding that the defendant-employee "clearly engaged in buyer-seller relations in a business setting" by selling computer parts and services to his employer through entities he controlled); *see also Compton v. Kirby*, 157 N.C. App. 1 (2003) (holding that breach of fiduciary duty was sufficient to support a UDTPA claim where the defendant-partner sold the partnership to a third-party without disclosing his fellow partners' interests and without their consent).

66. Here, Plaintiff has not sufficiently alleged facts that demonstrate interactions with other market participants or alleged unfair or deceptive conduct of Defendant Olds in his capacity as a member of Cressbrook. The alleged failure of Defendants to provide Plaintiff a lump sum cash payment from Cressbrook does not

amount to conduct "in or affecting commerce." Instead, the alleged conduct is limited to Cressbrook, a single entity, which North Carolina courts have consistently held does not fall within the scope of the UDTPA. *See Powell v. Dunn*, 2014 NCBC LEXIS 3, at \*17 (quoting *White v. Thompson*, 364 N.C. 47, 51, 53 (2010)). Accordingly, the Court **GRANTS** Defendants' Motion with respect to the UDTPA claim.

### F. Piercing the Corporate Veil

67.    Disregarding the corporate entity is not a theory of liability, but rather a means of imposing liability. *See Krawiec v. Manly,* 370 N.C. 602, 611 (2018) (quoting *Green v. Freeman*, 367 N.C. 136, 146 (2013)). Evidence typically supporting piercing the corporate veil includes inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records. *See Glenn v. Wagner*, 313 N.C. 450, 455–58 (1985) (citations omitted).

68.    Here, Plaintiff contends that he did not plead piercing the corporate veil as an independent cause of action. However, the Complaint suggests otherwise.[71] Accordingly, the Court **GRANTS** Defendants' Motion in respect to the piercing the corporate veil claim without prejudice and permits Plaintiff to pursue veil piercing as a remedial theory if supported by the remaining claims and the evidence.

---

[71] (Compl. ¶¶ 60-66.)

## G. Punitive Damages

69. "[P]unitive damages are a remedy rather than a standalone cause of action." *Halikierra Cmty. Servs. LLC v. N.C. HHS*, 2021 NCBC LEXIS 27, at \*25 (N.C. Super. Ct. Mar. 25, 2021); *see also Collier v. Bryant*, 216 N.C. App. 419, 434 (2011) ("Punitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action.").

70. Because Plaintiff purports to assert a claim for relief out of what is merely a remedy[72], the Court **GRANTS** Defendants' Motion with respect to the punitive damages claim and this claim is hereby **DISMISSED** without prejudice. Because the award of punitive damages is a valid remedy against a litigant under appropriate circumstances, the dismissal of this claim is without prejudice, and does not prevent the Court from awarding, or Plaintiff from seeking, this same remedy later on in this litigation upon a showing of factual and legal entitlement.

## H. Statement of Sum Certain

71. Plaintiff's Complaint includes a "Statement of Sum Certain" section where Plaintiff states that, for purposes of potential default, he seeks a sum certain or a sum capable of being made certain by computation.[73] Plaintiff identifies that amount as the value of the UTMA account on the date Plaintiff attained 21 years of age, plus

---

[72] (*See* Compl. ¶¶ 73-76.)

[73] (*See* Compl. ¶ 76.)

the value of each transfer from the UTMA account, plus interest at the legal rate, with the resulting value trebled.[74]

72.     The Court does not construe this section as an independent cause of action. Rather, it is a statement of the damages Plaintiff seeks to recover.  *See* N.C.R. Civ. P. 8(a)(2).  Accordingly, to the extent Defendants move to dismiss the "Statement of Sum Certain" as a separate claim, the Motion with respect to this claim is **DENIED** because there is no independent claim to dismiss.

<u>Plaintiff's Motion to Dismiss Defendant Olds' Counterclaim</u>
<u>Defamation</u>

73.     Plaintiff asserts that Defendant Olds fails to state a counterclaim for defamation on several grounds, including (1) the counterclaim on its face shows the statements are subject to a qualified privilege, (2) with respect to statements allegedly made to "financial institutions," Wofford College, "government agencies [including] the Polk County Sheriff," and other unidentified third parties, Defendant Olds failed to plead the content of the statements, the identity of the persons to whom the alleged statements were published, the time the statements were made, malice and special damages,  (3) Defendant Olds fails to identify which of the alleged statements in the 2 March 2025 and 3 March 2025 emails is untrue, how the alleged statements harmed him, and which of the alleged statements caused such harm, and (4) the statements are non-actionable opinion.

---

[74] (*See* Compl. ¶ 76.)

*First Ground*

74.    Qualified privilege arises where "(1) a communication is made in good faith, (2) the subject and scope of the communication is one in which the party uttering it has a valid interest to uphold, or in reference to which he has a legal right or duty, and (3) the communication is made to a person or persons having a corresponding interest, right, or duty." *Presnell v. Pell*, 298 N.C. 715, 720 (1979) (original citation and internal quotation marks omitted).  The duty need not be legal, and it is sufficient if it is a moral or a social duty.  *Stewart v. Nation-Wide Check Corp.*, 279 N.C. 278, 286 (1971).

75.    "Where qualified privilege exists, plaintiff cannot recover absent actual malice" and "[t]he burden of proving actual malice rests on plaintiff."  *Stewart,* 279 N.C. at 283.  A false and unprivileged charge of the crime of embezzlement is actionable *per se.  Id.* at 284.  However, even when there is an inference of malice created by libel per se, a finding of qualified privilege rebuts the inference of malice and makes it necessary for the plaintiff to prove actual malice before he can recover. *You v. Roe*, 97 N.C. App. 1, 12 (1990).

76.    While qualified privilege most often does not operate in the context of motion to dismiss for failure to state a claim, where a claimant establishes the existence of the privilege in their pleading they must plead malice to survive such a motion. *See, e.g., Presnell v. Pell*, 298 N.C. 715, 720 (1979); *Andrews v. Elliot*, 109 N.C. App. 271, 275 (1993).

77. Actual malice may be proven by evidence of ill-will or personal hostility on the part of the declarant or by a showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity. *You v. Roe*, 97 N.C. App. at 12.

78. The Court will assume that qualified privilege applies to Plaintiff's statements, but Defendant Olds' Counterclaim does allege actual malice. Defendant Olds asserts that "Plaintiff knew that the statements about Dr. Olds were false or made the statements with reckless disregard to their falsity."[75] Per the criteria for proving actual malice in *You,* Defendant Olds alleged actual malice in his counterclaim because he alleged that Plaintiff knew that the statements about Defendant Olds were false.[76] At the 12(b)(6) motion to dismiss stage, the Court concludes that Defendant Olds has sufficiently pleaded actual malice. Accordingly, Plaintiff's Motion is denied on this ground.

*Second Ground*

79. Plaintiff argues that Defendant Olds' allegations regarding statements allegedly made to "financial institutions," Wofford College, "Government Agencies [Including] the Polk County Sheriff", and other unidentified third parties fail to state a claim for defamation because Defendant Olds fails to sufficiently plead: the content of the statements, the identity of the persons to whom the alleged statements were

---

[75] (Countercl. ¶ 14.)

[76] (Countercl. ¶¶ 6, 7, 13-14.)

published, the time the statements were made, malice, and special damages.[77] The Court agrees in part.

80. Defendant Olds alleges Plaintiff has made "numerous statements" to "third parties in person, to financial institutions, to government agencies, including, without limitation, the Polk County Sheriff, and to Wofford College."[78] Defendant Olds also alleges that "Plaintiff reported to the financial aid office at Wofford College that Dr. Olds had run out of money and taken money from Plaintiff to apply to Dr. Olds's own financial needs, leaving Plaintiff with no way to pay for college." [79]

81. Defamatory remarks needn't be stated verbatim but must "be alleged substantially in haec verba, or with sufficient particularity to enable the court to determine whether the statement was defamatory." *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 84 (1980).

82. Rule 8(a)(1) requires a "short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief[.]" N.C. Gen. Stat. § 1A-1, R. 8.

83. Rule 9(f) requires allegations of the time and place the alleged defamatory statements were published. N.C. Gen. Stat. § 1A-1, R. 9(f); *Stutts*, 47 N.C. App. at 84.

---

[77] (Br. Supp. Pl.'s Mot. Dismiss Defendant Olds' Countercl. [hereinafter, Br. Supp. Pl.'s Mot.] 8-10, ECF No. 25.)

[78] (Countercl. ¶ 9.)

[79] (Countercl. ¶ 8.)

84.    For slander *per quod*, false remarks may "sustain an action only when causing some special damages (*per quod*), in which case both the malice and special damage must be alleged and proved." *Izydore v. Alade*, 242 N.C. App. 434, 445 (2015). To prevail on a slander *per quod* claim, the injurious character of the words and some special damage must be pleaded and proved. *Id.*

85.    In contrast, libel *per se* and slander *per se* presume malice and damages by proof of publication, with no further evidence required as to any resulting injury. *Stewart v. Nation-Wide Check Corp.,* 279 N.C. 278, 284 (1971).

86.    Defendant Olds' allegations concerning statements to unidentified "financial institutions", "government agencies", and other unidentified third parties are insufficiently pleaded per the standard articulated in *Stutts*. Defendant Olds' general allegation that Plaintiff made "numerous statements" to broad categories of recipients concerning "fraud allegedly committed by Dr. Olds by theft of money from Plaintiff"[80] fails to identify dates of publication, specific words used, particular recipients, or the circumstances in which the statements were made. The Court cannot determine whether those alleged statements are defamatory or whether they are actionable per se. Insofar as these statements are only actionable *per quod*, Defendant Olds' bald allegation of injury to his professional and personal reputation is insufficient to plead special damages. Accordingly, the allegations are too vague to state a defamation claim.

---

[80] (Countercl. ¶ 9.)

87. Regarding the statement to Wofford College's financial aid office, the Court reaches a different conclusion. In that statement, substance is alleged: that Plaintiff stated that Defendant Olds had run out of money, had taken Plaintiff's money for Defendant Olds' own financial needs, and left Plaintiff unable to finance his college expenses.[81] Although Defendant Olds does not identify the precise date of publication, the allegation identifies the recipient, substance, and context of the statement with sufficient particularity to provide notice at the 12(b)(6) motion to dismiss stage. Additionally, because the alleged statement includes an accusation of financial misconduct, it may be actionable per se, which means that special damages need not be pleaded per *Stewart*.

*Third Ground*

88. Plaintiff also argues that Defendant Olds' allegations regarding the emails of 2 March 2025 and 3 March 2025 fail to state a claim because Defendant Olds has not identified which of the alleged statements are untrue, how the alleged statements harmed him, and which of the alleged statements caused such harm.[82] The Court disagrees with Plaintiff on this ground.

89. Unlike the allegations concerning the unidentified third parties, the counterclaim identifies the dates of the emails, the excerpts Defendant Olds argues are defamatory, and the recipients of the emails.[83] Specifically, these excerpts include

---

[81] (Countercl. ¶¶ 6-8.)

[82] (Br. Supp. Pl.'s Mot. 11-12.)

[83] (Countercl. ¶¶ 6-7.)

allegations that Defendant Olds fraudulently withdrew money from Plaintiff's Schwab account, abused Plaintiff, engaged in violence and intimidation, and could face prison time.[84] At the pleading stage, these allegations provide sufficient notice of the challenged statements. Accordingly, Plaintiff's Motion is denied on this ground.

*Fourth Ground*

90. Plaintiff's fourth ground for dismissing Defendant Olds' counterclaim is that Defendant Olds fails to state a claim because the alleged statements are non-actionable opinion.[85] The Court disagrees with Plaintiff on this ground.

91. Opinions are those statements that cannot be proven true or false. *See Skinner v. Reynolds*, 237 N.C. App. 150, 155 (2014) ( "[N]either plaintiff's inner motivation for his accusations, nor the hypothetical reaction of a future client or judge is a fact that can be proven"); *Daniels v. Metro Magazine Holding Co., L.L.C.*, 179 N.C. App. 533, 542 (2006) (expressions of pure opinion are not capable of being proven or disproven).

92. While some of the alleged statements may reflect Plaintiff's opinions or characterizations, the counterclaim does also allege statements that are able to be proven true or false per *Skinner* and *Daniels*. In particular, Defendant Olds alleges that Plaintiff stated Defendant Olds took Plaintiff's funds for Defendant Olds' own financial needs, withdrew money from Plaintiff's Schwab account, and engaged in

---

[84] (Countercl. ¶¶ 6-7.)

[85] (Br. Supp. Pl.'s Mot. 12.)

conduct for which he could face prison time. [86] These, contrary to Plaintiff's argument, are not simply subjective opinions, but rather factual assertions or implications concerning potential criminal conduct and financial misconduct.

93.     At the motion to dismiss stage, the Court need not determine whether each alleged statement is ultimately actionable.  The Court finds it sufficient that Defendant Olds has alleged at least some statements that are not protected as non-actionable opinion and are capable of defamatory meaning. Accordingly, Plaintiff's Motion is denied on this ground.

94.     On the basis of the first, second, third, and fourth grounds, the Court **GRANTS** Plaintiff's Motion to the extent it is based on alleged statements to unidentified financial institutions, government agencies, and other unidentified third parties.  Plaintiff's Motion is otherwise **DENIED**.

IV.

CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Court hereby **GRANTS in part** and **DENIES in part** the Motions as follows:

a. Defendants' Motion is **GRANTED with prejudice** with respect to Plaintiff's claims for Fraud, Common Law Fraud, Fraudulent Representation, Fraud in the Inducement, Fraudulent Conveyance, and Unfair and Deceptive Trade Practices.

---

[86] (Countercl. ¶¶ 6-7.)

b. Defendants' Motion is **GRANTED** without prejudice with respect to Plaintiff's claims for Piercing the Corporate Veil and Punitive Damages.

c. Defendants' Motion is **DENIED** with respect to Plaintiff's claims for Conversion, and Statement of Sum Certain.

d. Defendants' Motion is **GRANTED** in part and **DENIED** in part with respect to Plaintiff's claims for Constructive Fraud.

e. Plaintiff's Motion is **GRANTED in part** to the extent that it is based on alleged statements to unidentified financial institutions, government agencies, and other unidentified third parties and is otherwise **DENIED.**

**SO ORDERED**, this the 25th day of June 2026.

/s/ A. Graham Shirley
A. Graham Shirley
Special Superior Court Judge
 for Complex Business Cases